75 100
95 483
75 100
101 417

75 100
125 283

75 100
e139 ²317

THE ALDINE PRESS v. JAMES D. ESTES.

*Contract—Order for goods—Notice of countermand—Directing verdict for plaintiff.*

1. The chief contest in this case was whether any binding contract existed between the parties, and, on a review of the testimony, *held*, that the case should have been submitted to the jury.

2. Where the court directs a verdict for a plaintiff, he must make out on the record a case that has no matter of fact left open.

3. Until a written contract becomes complete by the signatures of both parties agreeing to the same thing no one is bound, and the negotiations are open to proof.

4. A notice of the countermand of an order for printed matter by a publisher, pursuant to a right reserved in the order in case of a sale of his paper by a given date, given on the supposition that such sale had been made, but which failed for want of a legal formality, and which notified the other party to incur no expenses, is sufficient to end the arrangement.

Error to Clinton. (Smith, J.) Argued April 17, 1889. Decided June 7, 1889.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Auten & Moss,* for appellant.

*O. L. Spaulding,* for plaintiff.

CAMPBELL, J.  Plaintiff, which is presumably a corporation, having its business office in New York, sued defendant, who was a publisher of a paper in St. Johns, for the price of 1,500 annuals or calendars for the year 1888, alleged to have been ordered in 1887.   The suit was brought before a justice, and defendant prevailed.   Upon appeal at the Clinton circuit, the judge who presided at the trial ordered a judgment for $96.40.

The bill of particulars filed with the justice claimed for—

"1,500 sheets and covers of the Aldine Press octavo annual for year 1888, as shown in order to W. W. Huntington, secretary and treasurer, Oct. 13, 1887, $90."

Precisely how this sum of $96.40, as of December 18, 1888, was made up, does not appear.  If the articles were to cost $90, the payment was not due till January 9, 1888, and the amount with interest would fall somewhat short of that amount.   But the order, which gave $90 as the price by catalogue of 1,500 copies, also gave a reduction of $18, which, as far as we can gather from the language, was a rebate on account of one page of advertisements to be supplied by plaintiff, leaving the amount which defendant was to pay, as set out in the order, $72.   The order is express in fixing $72 as the sum to be paid, and there is nothing in the record to explain it, if the order was relied on.

But, when plaintiff introduced testimony, the proof offered was furnishing 1,500 annuals, which were sworn to be worth $90; and there was reference made by the witness to a page advertisement sent to defendant, with no further explanation, so far as appears.   As no error was specifically assigned on the correctness of the amount, if any recovery was to be had, it is possible there was some reason for disregarding the $18 which we know nothing of.   It is one of the ambiguities in the case that obscure the facts.

The chief contest was whether any binding contract existed at all.   The evidence indicates these facts:

On October 13, 1887, some one purporting to be an agent of plaintiff, whose name does not appear in the record, and who was not sworn in the cause, applied to defendant, then publisher of the Clinton Independent, to have him purchase such number as he should wish of the annual for 1888, then kept on sale by plaintiff. This annual had blanks upon the title-page, which could be filled in with the name of any paper or publisher, the object being to make it appear as published by the person whose name should be inserted, so as to be his annual. The agent presented a note-sheet having printed on it a title-page which was a sample of the proposed title, with blanks for the name of the publisher and his paper. On the second page was a price-list of the annual in sheets, in lots from 500 to 3,000, at prices reduced somewhat for the larger quantities, and with prices also, separately, for illuminated covers. In this price-list the customer was to put in his own imprint on the illuminated cover, but the blank order appended required plaintiff to do it without charge on the title-page. Above the price-list was a printed notice to this effect:

1. That the order when signed was only a business letter, and not a contract.

2. It was meant to set forth all offered and expected, so as to prevent misunderstanding.

3. That all orders were solicited subject to acceptance in New York city on the face, as written.

4. That no one outside of the office was authorized to verbally or otherwise change, modify, or in any way affect the writing, which was the only thing considered and acted on in New York.

5. All payments must be made to the order of plaintiff, or its named secretary and treasurer.

This printed order, which had no written filling except the number of copies and the date for sending three blank dummies for use in canvassing, and the date of payment of draft, was to this effect: It ordered 1,500 sheets of the annual and 1,500 covers,—the latter with blanks for such matter as

defendant might put in for imprint or otherwise,—at a sum of $90, less $18 for the advertising page before referred to, with three dummies, which were to be sent about October 25. Then followed certain conditions to be binding on plaintiff if the order was accepted, partly concerning the style, and precluding plaintiff from supplying any one in St. Johns with the annual, except defendant. Then followed this sentence in writing:

"Privilege of countermand, in case I dispose of this paper, till December 1."

This order was signed by defendant. Near the place of signature was a small printed memorandum in red, warning against signing the order without reading the notice. Indorsed on this order was a printed direction signed by defendant, to forward the goods about December 5, and a printed memorandum that, if plaintiff wished to ship earlier for its own convenience, it might be done, but without hastening time of payment. On this order was stamped an acceptance October 18, signed by the secretary and treasurer, Mr. Huntington.

The plaintiff introduced one of its officers, Mr. Sutton, who testified that the order was received by mail at the New York office, and accepted October 18, 1887; that witness sent three dummies and notice of acceptance of the order by mail October 25, 1887, with a copy of a page advertisement. No copy of this letter of acceptance was shown in evidence. Witness said plaintiff never received any countermand. Defendant admitted receiving the dummies, but denied receiving notice of the acceptance, and received nothing but the dummies. The goods were sent from New York December 5, and reached St. Johns two days thereafter, but defendant refused to accept them.

The plaintiff's case depended entirely on the existence of a binding written contract, carried out by plaintiff according to

its terms; and a *prima facie* case was made out when the testimony for plaintiff was in.

Defendant claimed the contract was never completed so as to make a valid agreement, and that before December 1, 1887, he countermanded his order. As the court left nothing to the jury, it was necessary for plaintiff to make out on the record a case that had no matter of fact left open.

The agent who saw defendant, as already stated, was not sworn, and his name does not appear in the record. But, as defendant's testimony given or offered must under such a ruling be held as true for the purposes of the trial, it is necessary to consider its purport. And from this, these facts appear:

. The defendant never had in his possession, never read, and never had explained to him any part of the printed matter, and understood when he signed the order that it was subject to countermand at any time before December 1. He never received any notice of acceptance; and it appears, by necessary inference, that he never had in his possession anything showing either his own proposal, or the acceptance, and that the paper must have been forwarded to New York by the agent. While the court allowed defendant to show what he understood the order to be, testimony was ruled out to the effect that he was to have a right to countermand at any time before December 1, not only in case of sale of his paper, but also in case he failed to secure advertisements to be inserted in his annual. About the middle of November he sent a postal card to plaintiff countermanding his order. He also gave evidence of a complete parole bargain for the sale of his establishment before the time of rovocation, which was not legally binding on account of the statute of frauds, and which was not finally and legally closed until 1888.

The court refused to allow proof that plaintiff's agent in October, 1887, and after the agent had dealt with defendant, tried to get Mr. Fuller, another publisher in St. Johns, to

purchase sheets of the annual, and, on Mr. Fuller's object-
ing to do so unless he could secure advertising, the agent
replied, in effect, that he had already made an arrangement
with defendant on those conditions, and it would do him no
good.

We think the case involved matters which should have
gone to the jury.

The defendant did not himself mail to the plaintiff the
order in question. By the terms of the notice relied on by
defendant the agent was not allowed to contract at all, and
the plaintiff could only become bound by an agreement in
writing signed by one of its officers. As the articles bar-
gained for were worth more than $50, a contract to be valid
must have been signed by plaintiff; and, by the terms of the
same notice, the so-called "order" was to be treated as a
mere business letter, in itself, binding no one.

If defendant's testimony received, or proposed, was true,
the agent had no right to mail his order to New York, except
on the understanding which he had with defendant. Until
a written contract becomes complete by the signatures of
both parties agreeing to the same thing no one is bound, and
the negotiations are open to proof. If defendant's testi-
mony is received, he never authorized any one to bind him
by procuring the acceptance of this written offer except on
condition of retaining a right of countermand; and, under
the terms of the order itself, it would have been a fraud on
defendant for the agent to forward his letter, and to open
negotiations with another publisher at St. Johns to furnish
him the same annual; and, until Fuller declined to purchase,
the agent did not forward defendant's order.

The case, so far as these preliminaries are concerned, is
open to the same considerations that were referred to in
*Weiden v. Woodruff*, 38 Mich. 130, and *Eberts v. Selover*, 44
Id. 519 (7 N. W. Rep. 225). The testimony was not so much
to vary a contract as to show that there never was any final

contract. This is more important, because, while there is no testimony in the case showing just what information was sent to defendant as to the acceptance of his order, and he never had in his possession any contract which bound plaintiff, he had, according to his testimony, a right to expect such an acceptance or agreement as he had made a condition of bargain with the agent at St. Johns. And we are not prepared to say that, as the testimony was offered and in part received, it was not a question of fact whether he ever agreed to run the risk of being bound by the chances of the mail, without having given to him full means of proving the contract against plaintiff, and the latter failed to comply, or violated the conditions, as the agent attempted to violate them by dealing with Fuller before acting on defendant's order or forwarding it.

But, furthermore, it seems that defendant countermanded the order before the time arrived for carrying it out. This countermand sent by mail, whether received or not, stood at least on the same footing with the mailing of acceptance, which was not received. The right to countermand existed under the written order in case of sale of defendant's press. The agreement was not one which laid any burden on plaintiff until after December 1. If countermanded before that time, plaintiff would lose nothing, except a possible future sale for a future consideration. The purpose for which defendant wanted the annual would fail if he had no paper to circulate as his own. It did not concern the plaintiff why, or on what terms, he ceased to have such a need. When he, in good faith, supposed he had sold out, and the bargain only failed for want of a legal formality, a countermand on that supposition, which gave plaintiff notice to incur no expense, was sufficient to end the arrangement if one existed. Plaintiff had no concern with the technical question whether the sale was complete.

And, whether the countermand was warranted or not, it

was at least a refusal to have the contract carried out; and, as there were no goods accepted, and none ready to furnish at the date of the countermand, it would raise questions not only as to the rule of damages, but also as to the form of declaring. The judgment should be reversed, and a new trial granted.

MORSE and LONG, JJ., concurred with CAMPBELL, J.

CHAMPLIN, J.    I think the facts should have been submitted to the jury; and, if they had found that defendant executed the instrument, understanding what it was, they would have been justified in finding a complete contract binding upon both parties.

SHERWOOD, C. J., concurred with CHAMPLIN, J.