DAVIDSON HARDWARE COMPANY v. DELKER BROTHERS BUGGY COMPANY.

(Filed 17 November, 1915.)

1. **Vendor and Purchaser—Contracts of Sale—Stipulations—Right of Cancellation—Issues.**

Where the purchaser sues for damages for the seller's breach of contract in failing to deliver certain merchandise, and the defendant relies upon a provision of the contract giving him the right to cancel it upon

receiving information unfavorably affecting the plaintiff's credit, an issue is too restrictive in its scope which confines the question to the receipt of this unfavorable information by the plaintiff, and, under the evidence in this case, an issue was properly submitted which also presented the question whether the defendant canceled the order in consequence of such information if such had been received by it.

**2. Vendor and Purchaser—Contracts of Sale—Right of Cancellation—Reasonable Time.**

A contract for the sale and delivery of merchandise providing that the seller would have the right of cancellation after the acceptance of the order, implies that this right of cancellation must be exercised within a reasonable time and, ordinarily, before the time stated for the performance of the contract of delivery by the seller.

APPEAL by defendant from *Lyon, J.,* at February Term, 1915, of DAVIDSON.

Civil action. Plaintiff sued for breach of contract by defendant in failing to ship 36 buggies. The case was here at Fall Term, 1914, and is reported in 167 N. C., 423. Defendant alleged that it failed to ship the buggies because of information received by it, after the order for them was given, which was unfavorable to plaintiff's credit, the contention being that this is a good defense by the terms of the contract. The contract was made 31 July, 1912. The first delivery of buggies was to be made 1 February, 1913, and the second 1 May, 1913, upon specifications to be furnished by 1 January, 1913. An agent of defendant went to Lexington, N. C., the place of delivery, and made up the specifications for 24 buggies of the lot some time before January, but no buggies were shipped, and plaintiff was thus deprived of all benefit under the contract, and was not able to procure buggies elsewhere until May, 1915, nor did it know that defendant had decided not to ship the buggies until February, 1915. An attachment was levied on a debt due to defendant by Smoak, McCrary & Dalton.

Defendant tendered the following issue: "Did defendant receive information affecting unfavorably the credit of the plaintiff?" The court declined to submit the issue as tendered, and submitted this issue instead thereof: "Did defendant receive information affecting unfavorably the credit of the plaintiff, and did it cancel said contract in consequence of said information?" Defendant excepted. The jury returned the following verdict:

1. What amount, if any, was plaintiff damaged by the failure of the defendant to ship the buggies, as alleged in the complaint? Answer: $350.

2. Did the defendant receive information affecting unfavorably the credit of the plaintiff, and did defendant cancel contract in consequence of such information? Answer: No.

3. Were Smoak, McCrary & Dalton indebted to the defendant at the time of the service of the attachment herein? Answer: Yes.

The defendant requested the court to instruct the jury to answer the second issue "Yes," if they believed the evidence. The instruction was refused, and defendant excepted. There was also a motion for a nonsuit, which was refused, and defendant again excepted. Judgment was entered upon the verdict and defendant appealed.

*E. E. Raper and Phillips & Bower for plaintiff.*
*Walser & Walser for defendant.*

WALKER, J., after stating the case: The question as to the damages recoverable was settled when the case was here before, and it is not again raised by the defendant. There is evidence in this record tending to show that defendant's failure to ship the buggies was not due to any information it had received unfavorable to the plaintiff's financial credit, if it had received the information at all. The particular stipulation is that "information affecting unfavorably the credit of the purchaser (plaintiff) shall give the seller (defendant) the right to cancel after acceptance." This, of course, means after acceptance of the order when the bargain had been struck, and it, further, evidently means that this right of cancellation shall be exercised before the time for performing the contract or delivering the buggies has arrived. It surely could not mean, or, at least, that was not the intention of the parties, that the option to cancel could be exercised at any time, or indefinitely, but it was the understanding and meaning of both parties that if, from information received by the seller, he should be made to suspect or doubt the financial responsibility of the buyer, he could revoke his acceptance of the order, with this clearly implied provision that this must be done within a reasonable time, which plaintiff contends must be before the day of performance has come and gone, and accompanied by notice to the buyer that he had rescinded it, so that he might make other arrangements to supply himself with buggies, as otherwise he might be greatly prejudiced. It is further contended that this must especially be true as to contracts of this kind, where the buggies were bought for delivery at a specified time, in order to get the advantage of the season, when the trade, or the opportunity to sell them again and realize the profit would be at its best. For this contention, the plaintiff's counsel relied on this passage from 35 Cyc., p. 150: "The seller must rescind, if at all, within a reasonable time after acquiring knowledge of the facts justifying rescission. Whether the seller has exercised this right reasonably is generally a mixed question of law and fact to be submitted to the jury, but if the delay is for such period as to be unquestionably without cause, the court may so declare as a matter of law." But we need not decide whether, as a matter of law, the defendant was too late in exercising the right of rescission, as the question was submitted to the jury in another view, and they were directed to find whether the option

to rescind had been exercised by the defendant because of the existence of the cause or ground which entitled it to cancel the contract; not alone whether the latter had received information damaging to plaintiff's credit, but whether, having received it, it acted upon it or was influenced by it in making the rescission, or by some other groundless cause. Under full and correct instructions, the jury have found this issue against the defendant. The issues were proper in form and substance, and enabled defendant to present its defense, as stated in the answer, in every aspect, and when this is the case they are sufficiently comprehensive. *Tuttle v. Tuttle,* 146 N. C., 484; *Lloyd v. Venable,* 168 N. C., 531; *Barefoot v. Lee, ibid.,* 89; *Zollicoffer v. Zollicoffer, ibid.,* 326.

The fourth assignment of error is not in the required form, as it does not, in itself, point out the error so that we can see on its face what the particular error is. Errors cannot be assigned by merely referring to exceptions by number, without stating in any way their nature. *Barringer v. Deal,* 164 N. C., 246; *Spruce Co. v. Hunnicutt,* 166 N. C., 202. But there is no merit in the assignment, as there was evidence to sustain the finding of the jury. The motion to nonsuit was properly overruled for the same reason, as there was evidence to support the verdict. The special provision in the contract, that the defendant might cancel it at its election when it had received information impeaching the plaintiff's financial credit, can be construed, we think, to mean but one thing, which is that the information must be the cause of defendant's rescission of the contract, or must have induced such action on his part. The court was therefore right in amending the issue which was tendered by the defendant, as it did, for it was clearly not intended that the receipt of such information alone should automatically rescind the contract, but that it should be a ground for its avoidance if the defendant was influenced thereby to exercise the option granted by its terms.

The case was properly tried and there is no reason for a reversal.

No error.