(97 Misc. Rep. 33)

## THADDEUS DAVIDS CO. v. HOFFMAN-LA ROCHE CHEMICAL WORKS.

(Supreme Court, Appellate Term, First Department.   October 6, 1916.)

1. CONTRACTS ☞250—CONSTRUCTION—"CONTINGENCIES BEYOND CONTROL."

Where contract to furnish chemicals provided that for "contingencies beyond control" it might be canceled, regardless of whether the parties contemplated that it would arise, the European war was such a contingency, and excused failure to comply.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1144; Dec. Dig. ☞250.]

2. CONTRACTS ☞250—CONSTRUCTION—GENERAL AND SPECIAL TERM—"CONTINGENCIES BEYOND CONTROL."

In contract to furnish chemicals, permitting cancellation in case of "contingencies beyond control, fire, strikes, accidents to works or stock or change in the tariff," the specific contingencies named do not restrict the general words "contingencies beyond control," which include all such contingencies not mentioned.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1144; Dec. Dig. ☞250.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Thaddeus Davids Company against the Hoffman-La Roche Chemical Works. Judgment for plaintiff, and defendant appeals. Reversed.

Argued March term, 1916, before LEHMAN, PENDLETON, and WHITTAKER, JJ.

Briesen & Schrenk, of New York City (Daniel Day Walton and Hans H. A. Meyn, both of New York City, of counsel), for appellant.

Young, Seacord & Ritchie, of New York City (C. Parker Lattin, of New York City, of counsel), for respondent.

LEHMAN, J.   In December, 1913, the defendant agreed to furnish to the plaintiff 1,120 pounds of crystal carbolic acid at 7½ cents a pound during the year 1914. The contract was made on a printed form of the defendant, and contained a clause that:

"Contingencies beyond your control, fire, strikes, accidents to your works or to your stock or change in the tariff will allow you to cancel this contract or any part of the same."

The plaintiff ordered and received in May, 1914, one drum of 280 pounds, and in November, 1914, the defendant ordered a second drum of 280 pounds, but received only 100 pounds. On January 21, 1915,

the defendant refused to make any further deliveries, and attempted to cancel the contract under the clause hereinbefore set forth. It was shown at the trial that the defendant was accustomed to receive goods of the character in question from abroad, and there can be no doubt that the plaintiff understood that the goods called for by the contract were made and imported from abroad. It further appears that in August, 1914, owing to the existence of a state of war between Germany and England and her allies, an embargo was placed upon the exportation of these goods from Germany, and thereafter the defendant could import no further goods of the character called for by the contract. The defendant claims now that this condition constitutes a contingency beyond its control within the meaning of the contract. The learned trial justice has overruled this contention, and apparently has held that these words as used in the contract are so limited by the following words that they do not cover conditions arising from acts of belligerent foreign countries.

[1] If the words "contingencies beyond your control" stood alone there could be little, if any, doubt, that they covered the conditions arising from the state of war beginning on August 1, 1914. It is true that probably these parties did not contemplate the probability or possibility of a world war arising which would interfere with the importation of the products of foreign nations, but the question in this case is not, what contingencies did the parties contemplate might arise, but what meaning did they intend to give to the words "contingencies beyond your control," and, if these words stood alone, they would cover all contingencies arising thereafter beyond the defendant's control which became the proximate cause of the inability of the defendant to comply with its contract.

[2] Undoubtedly it is a well-established canon of construction that general expressions will be restricted by particular descriptions or additions following them. Like other canons of construction, however, this rule is applied to determine the intent of the parties, and not to thwart such intent. When applied, it does not destroy entirely the force of the general words, but it limits the force of the general words so that it covers only the general class in which the particular words fall. This rule, however, has, I think, no application to the contract under consideration. The particular words are, "fire, strikes, accidents to our works or to our stocks or changes in tariff," and I do not think that these contingencies represent any particular class or character to which the original and inclusive term can be restricted without doing violence to the evident intent of the parties. They are rather instances of contingencies which the parties evidently contemplated might occur which would make performance of the contract impossible or inequitable, and I can find no evidence from the use of these terms that the parties ever intended to restrict the words "contingencies beyond your control" to these particular instances. On the contrary, I think that the intent of the parties is clear that the defendant should have a right to cancel its contract whenever contingencies beyond its control occurred by which the defendant's position was so changed that performance of the contract would clearly

put a burden upon the defendant greater than the parties contemplated when the contract was made. It follows that the judgment should be reversed, with $30 costs, and the complaint dismissed, with costs. All concur.

WHITAKER, J. (concurring). The facts and questions at issue have been clearly stated by my learned Associates. The only question to be determined is the construction of the contract sued upon.

The primary and universal rule governing the construction of contracts is that the intention of the parties, when ascertained, shall govern. All other rules of construction are subsidiary, and have been evolved by the courts for the purpose of ascertaining and giving force to, and not defeating, this intention.

I think the use of the phrase "contingencies beyond your control" was intended to cover all causes which no care, foresight, or acts of the defendant could have controlled or prevented. The mere inclusion of contingencies which were potentially within the power of the defendant to prevent, such as fire, strikes, etc., was not intended by the parties to limit and confine the uncontrollable contingencies simply to a change in the tariff. The intention of the parties, in my opinion, is disclosed upon the contract itself, and was that any contingency which was concededly beyond the control of the appellant, and which made it impossible for it to perform the contract, gave it the right of cancellation.

The judgment should be reversed.