HERRMANN v. BOWER CHEMICAL MFG. CO.

(Circuit Court of Appeals, Third Circuit. May 17, 1917.)

No. 2213.

1. SALES ⊜⇒121—BREACH BY SELLER—ACTIONS—INSTRUCTIONS.

A contract for the sale of prussiate of potash, the principal ingredient of which was carbonate of potash, which defendant claimed it could not obtain because of the European war, provided that the sellers should not be liable for delays due to causes such as war, etc., preventing or impeding the manufacture or delivery of the merchandise. In an action by the buyer for breach of such contract, the court charged that, where a party contracted for the delivery of certain merchandise, he was obliged to use diligence to supply himself with sufficient quantities to carry out his contracts, if he could do it in the exercise of due diligence; that the questions for consideration were whether defendants used the diligence which a reasonably prudent man in good faith, desiring to carry out the contract, would exercise; that after the war broke out it was defendant's duty to take notice thereof, and after a German embargo was laid, and after a British Order in Council interfering with importations from Germany, it was their duty to take notice thereof, and if there was reasonable ground for apprehension that the supply of carbonate of potash would be cut off, and that they would be prevented or impeded in manufacturing or delivering under their contract, then it was their duty to provide themselves through other sources with a sufficient supply to carry out the contract, and if they failed in the exercise of that diligence and due care plaintiff was entitled to recover. *Held*, that plaintiff had no ground to complain of this instruction.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223.]

2. SALES ⊜⇒421—BREACH BY SELLER—ACTIONS—INSTRUCTIONS.

An instruction that if the carbonate of potash which came into defendant's possession, and the prussiate of potash which was bought and sold, should, in the exercise of the diligence and reasonable prudence which a reasonably prudent man should exercise, be apportioned to the contracts made before the beginning of the war, then, as to any quantities which should have been devoted to the performance of the contracts with plaintiff, plaintiff was entitled to delivery of his proportionate share, and to the extent that he was deprived of those quantities he would be entitled to recover, was not erroneous, where it was plaintiff's contention that it was defendant's duty to apply such carbonate of potash as it could secure to plaintiff's contract, and not to prorate it with later made contracts.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. W. Thompson, Judge.

Action by Morris Herrmann against the Bower Chemical Manufacturing Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Louis Marshall, of New York City, John G. Johnson, of Philadelphia, Pa., and Abraham Benedict, of New York City, for plaintiff in error.

James Piper, of Baltimore, Md., George Wharton Pepper, of Philadelphia, Pa., and Francis J. Carey, of Baltimore, Md., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Morris Herrmann, surviving partner of Herrmann & Co., a citizen of New York, brought suit against the Henry Bower Chemical Manufacturing Company, a corporate citizen of Pennsylvania, to recover damages for breach of contract. The trial resulted in a verdict for defendant. On entry of judgment on such verdict, plaintiff took this writ of error.

The proofs in this case tended to show that by written bill of sale, dated June 10, 1914, the defendant sold plaintiff 400,000 pounds of "prime yellow prussiate of potash (standard technical quality)," with an option for an additional 100,000 pounds, declarable April 1, 1915. The deliveries were to be "in equal monthly installments over the year 1915." The bill of sale further provided:

"Seller not liable for delays due to causes beyond their control, or for non-arrival of any shipment-lost in transit, or for causes, such as strikes, lockouts, war and insurrection, fires, accidents, or the like, which may prevent or impede the manufacture or delivery of the merchandise herein contracted. In such event, shipments or deliveries may be suspended during the period required to remove the cause of or to repair the damage, or until there is a normal production again."

The proofs showed the seller made at its works in Philadelphia prussiate of potash, and that its principal ingredient was carbonate of potash, which is practically an exclusive European product, and almost exclusively one of German make and export. For that reason the fulfillment of the contract was largely affected by the European war, and defendant, as a result, did not make the deliveries provided by the contract. At the trial the court refused plaintiff's point that:

"The provision in the contract to the effect that the 'seller is not liable for causes, such as * * * war, * * * which may prevent or impede the manufacture or delivery of the merchandise herein contracted,' relates solely to a war in the United States, or in which the United States is engaged or directly concerned, and not to a war in which the United States is not thus engaged or concerned, between two or more other countries, from one of which is obtained a supply of materials needed in the manufacture of the merchandise sold."

We find no error in the refusal of the court to give this binding instruction as to the construction to be placed on contract. Assuming for present purposes, but without deciding, that the contract was for the sale of a specific article which was manufactured here in America, and that the strikes, lockouts, wars, fires, accidents, and the like, guarded against in the contract, were such as were incident to the manufacture of the article in America, and not to the ingredients, obtained elsewhere, from which such article was manufactured, we think that, in view of the construction given by the acts of both parties, it certainly did not lie in the plaintiff's power to ask the court to hold the contract did not apply to the European war.

[1] Without discussing in detail the other assignments of error, we may say they group themselves around the several positions taken by

the plaintiff, namely, that it was the duty of the defendant upon the outbreak of the war to secure all the carbonate of potash required to carry out all these contracts the defendant then had, and that as to such carbonate of potash as the defendant could secure it was its duty to apply it to the plaintiff's contract, and not to prorate it with later made contracts. The proofs tended to show that, soon after the war broke out, Germany placed an embargo on the export of potash, but that this was afterwards lifted to an extent which permitted such quantities of potash to come through that it was obtainable on the market. Later the British Order in Council was made which prohibited the exportation of German products made through neutral ports in neutral vessels, and there was proof that this ran the supply of potash to prohibitive prices. There was also proof tending to show that at all times the defendant could have procured carbonate of potash at advanced, but not prohibitive, prices. All of these proofs the court submitted to the jury, charging with reference to the defendant's duty to provide for a sufficient supply of carbonate to carry out the contract, as follows:

"Now, where a party enters into a contract providing for the delivery of certain articles of merchandise, he is obliged to use diligence to supply himself with sufficient quantities to carry out the terms of his contracts, if he can do that in the exercise of due diligence. * * * So that the questions for you to consider under all the evidence are whether you are satisfied from the evidence that the defendant did use the diligence which I have stated, that is, the diligence which a reasonably prudent man, in good faith desiring to carry out the terms of his contract, would exercise, in obtaining supplies necessary to proceed with the manufacture and delivery of the prussiate of potash. * * * Now, there are different degrees, perhaps, of diligence required of the defendant according to the circumstances at the various times. After the war broke out, it was the duty of the defendant to take notice that there was a condition of war, and after the German embargo was laid, and after the British Order in Council, it was its duty to take notice of those conditions, and at all times during the war, if you find that there was reasonable ground for apprehension on its part that the source of supply of carbonate of potash would be cut off, and that it would be prevented or impeded in manufacturing or delivering under its contract—if you find that there was ground for that reasonable apprehension, then you would be justified in finding that it was its duty to provide itself through some other source with a sufficient supply to carry out the terms of the contract, and, if you find that it failed in the exercise of that diligence and due care, then the plaintiff would be entitled to recover damages for the difference between the market price and the contract price which was named in the contract between the parties."

In laying down this measure of a seller's obligation of preparatory preparedness to fill a contract, certainly the buyer had no ground to complain.

[2] In regard to the obligation of the defendant to prorate among its contracts the court thus instructed the jury:

"If, from the evidence, you determine that the carbonate of potash which came into the defendant's possession, and the prussiate of potash which was bought and sold, should, in the exercise of diligence and reasonable prudence which a reasonably prudent man should exercise, have been apportioned in like manner to the contracts made before the beginning of the war, then as to any quantities of prussiate of potash which should have been devoted to the performance of the contracts with the plaintiff, the plaintiff would be

entitled to delivery of his proportionate share of prussiate of potash out of such quantities, and to the extent that he was deprived of those quantities he would be entitled to recover damages for the difference between the contract price which he was to pay for the prussiate of potash, and the market price at the time when such deliveries would have been due."

The verdict having been for the defendant, the facts are settled that, in the face of excepted cause of war to which the contract was made subject, the defendant, in providing against the conditions caused by the war, in preparing to fulfill the plaintiff's contract, and in prorating to the plaintiff such partial performance as it could, the defendant, as required by the charge, "did in good faith use all reasonable means to perform." Such being the established facts, we find no injury was done the plaintiff in the trial which warrants a reversal of this judgment.

It is therefore affirmed.