STANDARD SILK DYEING CO. v. ROESSLER & HASSLACHER CHEMICAL CO.

(District Court, S. D. New York. July 23, 1917.)

No. 123.

1. CONTRACTS ⬤⟱303(1)—PERFORMANCE—EXCUSES FOR NONPERFORMANCE.

If what is agreed to be done is possible and lawful, the obligation to perform is not excused by difficulty or improbability of performing, or by the hardship, expense, or loss to the party performing, or by anything short of impossibility to perform.

2. SALES ⬤⟱172—PERFORMANCE BY SELLER—EXCUSES.

Where a contract of sale of prussiate of soda, a German product, providing that the sellers should not be liable for causes beyond their control, including war or insurrection, was made after war was declared between Germany and Great Britain, performance was not excused by the British orders in council which in effect placed an embargo on shipments from Germany, as, in view of the then existence of war, the parties must have intended relief only in case the United States became involved in the war, especially where the seller had on hand sufficient prussiate of soda to fill the buyer's contract if it had not sold its product to other buyers before time for delivery under the contract.

At Law. Action by the Standard Silk Dyeing Company against the Roessler & Hasslacher Chemical Company. On motion to confirm a referee's report. Exceptions sustained, and motion denied.

⬤⟱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hugh Gordon Miller, of New York City, for plaintiff.

Creevey & Rogers, of New York City (Garrard Glenn, William B. Walsh, and William S. Creevey, all of New York City, of counsel), for defendant.

MANTON, District Judge. The plaintiff sues for breach of contract. A reference was ordered to a referee, and he has reported practically against the plaintiff, giving it a judgment for the sum of $175.60. The plaintiff, feeling aggrieved thereby, opposed a motion to confirm the referee's report. The contract in question was entered into on January 13, 1915, by the terms of which the defendant agreed to furnish the plaintiff 35,000 pounds of prussiate of soda. Under the terms of the contract they delivered about 5,912 pounds. The balance was not delivered. Both counsel are in accord in saying that the principal question involved is the question of the sufficiency of the defense interposed to the failure of delivery. Claim is for damages for the nondelivery of the balance. The contract provides, among other things:

"Sellers not liable for nonarrival of any shipment lost in transit at sea or on land or for losses or damages or delays due to causes beyond their control, including in such cases strikes, lockouts, floods, fire, accidents to work where the goods are manufactured, war or insurrection. In addition to these causes, should sellers be delayed or cut off in whole or in part from their supply of raw materials by any other cause or reason, they shall not be liable to buyers for failure to deliver, or delay in delivery of the whole or any part of said merchandise."

Prussiate of soda is a German product, and the importation was to be had from Germany. The contract was entered into after Germany had declared war on Great Britain and at the time when a state of war existed between Germany and other countries. At the time of entering into the contract the defendant had 130,140 pounds of this product on hand in this country, which had been previously imported from Germany. It thereafter received other quantities to the extent of 31,936 pounds. Under 12 contracts it was obligated to deliver 366,-872 pounds. Thereafter Great Britain promulgated orders "in council" which in effect were an embargo on this product as well as other products of Germany, and the defendant says it was unable to secure prussiate of soda in Germany thereafter, and asks to be relieved from the contract by reason thereof, invoking the aid of the above-quoted clause of the contract. The defendant, after this embargo, apportioned the prussiate of soda which it was able to secure among its customers to whom it was under contract at the time proportionately, and asks to have its contract construed so as to be relieved from the obligations thereof by reason of this conduct.

The referee has found that the apportionment was not fair as to this plaintiff, and has awarded a small judgment to the plaintiff by reason thereof. In my opinion, the referee has erred in his conclusions of law, and the plaintiff's exceptions to it should be sustained.

[1] The abstract rule of law for performance of contract has been well stated in Cameron Hawn Realty Co. v. Albany, 207 N. Y. 381, 101 N. E. 162, 49 L. R. A. (N. S.) 922, when it was said:

"If what is agreed to be done is possible and lawful, the obligation of performance must be met. Difficulty or improbability of accomplishing the stipu-

lated undertaking will not avail the obligor. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance. The courts will not consider the hardship or the expense or the loss to the one party or the meagerness or the uselessness of the result to the other."

In the recent case of Thaddeus Davids Co. v. Hoffman Co., 97 Misc. Rep. 33, 160 N. Y. Supp. 973, before Judge Lehman in the state Supreme Court, where the clause was found in the contract, "Contingencies beyond your control, fire, strikes, accidents to your work or to your stock or change in the tariff will allow you to cancel this contract or any part of the same," and where it was sought to be relieved of the obligations of the contract by the fact that war broke out in August, 1914, between Germany and Great Britain, the learned court said:

"If the words 'contingencies beyond your control' stood alone, there could be little, if any, doubt that they covered the conditions arising from the state of war beginning on August 1, 1914. It is true that probably these parties did not contemplate the probability or possibility of a world war arising which would interfere with the importation of the products of foreign nations, but the question in this case is not what contingencies did the parties contemplate might arise, but what meaning did they intend to give to the words 'contingencies beyond your control'? And if these words stood alone, they would cover all contingencies arising thereafter beyond the defendant's control which became the proximate cause of the inability of the defendant to comply with its contract."

Judge Whitaker in the same case said:

"I think the use of the phrase 'contingencies beyond your control' was intended to cover all causes which no care, foresight, or acts of the defendant could have controlled or prevented. The mere inclusion of contingencies which were potentially within the power of the defendant to prevent, such as fire, strikes, etc., was not intended by the parties to limit and confine the uncontrollable contingencies simply to a change in the tariff."

In this case the contract was made before the commencement of the war. The same is true of Ducas v. Bayer, 163 N. Y. Supp. 32.

[2] The two clauses in the contract here considered: The first, delays or losses due to causes beyond the seller's control; second, relief because of war or insurrection. Endeavoring to find the intent of the parties by examination of the contract itself it must mean, the parties having entered into the contract after the existence of war between Germany and Great Britain, that the parties intended relief only in case the United States became involved in the war, for if the existence of the war was a relief of the performance of the contract, it was foolhardy to enter into the contract at all. Here both parties deliberately entered into the contract knowing of the dangers arising from the war some months after its existence. They must have recognized —at least they should be held to have recognized—that each belligerent country would endeavor to prevent merchant ships leaving the ports of the respective countries with cargoes of merchandise of any and all character. There was likewise the danger even that Germany itself might forbid the exportation of this product and require it for home consumption. Judge Lehman recently said in the Ducas Case (supra):

"It seems now established that the existence of a state of war between two foreign nations, and interruption of commerce by the belligerents, can constitute no defense to an action upon a contract to be performed in this country."

And Judge Weeks, in Richards & Co. v. Wreschner, 174 App. Div. 484, 156 N. Y. Supp. 1054, said:

"The claim of the defendants that they are excused from performance because of the interference with the source of supply or with the opportunity for shipment by reason of the existence of a state of war between Germany and Belgium, and also because of the subsequent illegality of shipment by reason of the proclamation of the German government prohibiting the exportation of merchandise contracted for, cannot be sustained.    It is well settled that impossibility due to a foreign war is no excuse."

But in addition the defendant at the time of entering into this contract had on hand more than sufficient to supply the demands of this plaintiff.    Having entered into the contract creating its obligation to perform and with an ability to perform if deliveries were made then, it cannot now be heard to complain that it has sold its product to other buyers and finds itself short of supplies to meet the demands of this plaintiff, even though the demands of this plaintiff might require delivery in installments at subsequent periods during the life of the contract; otherwise the fundamental law governing the performance of all contracts, "the difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor," would be dispensed with.

If the defendant so wished, it might enter into a contract to supply this product even in the face of an embargo set against the country of its production by a warring nation.    It might do so with the hope that in some way ships might pass successfully the detection and confiscation of the cargo by Great Britain.    Indeed, it appears from the evidence, and is found by the referee, that some 53,000 pounds were imported during the period of the existence of the war up to the time of the breach of this contract.

Judge Wolverton, in Balfour v. Portland Co. (D. C.) 167 Fed. 1010, where a provision of the carrier's contract exempted it from "loss of damage occasioned by arrest or restraint of princes, rulers or people," had a somewhat similar question before him, and he used this language:

"It can hardly be disputed that the respondent entered into the contract with full knowledge of the existence of war conditions, and with the intention of carrying the flour notwithstanding these conditions. * * * Now, having entered into such a contract with that intent and purpose in view. what is the significance and intendment of the clause referred to?    It can hardly be contended that such intendment and signification should be the same as where the contract was made prior to the time that any such war conditions arose, or not in anticipation thereof.    If it can bear such a construction, the contract has made it optional with the respondent to carry or not as it might see fit from motives of its own, regardless of the fact that its purpose and intent was to carry, notwithstanding the dangers incident to the traffic or on account of the war. * * *

"Had the charter party been entered into prior to the prevalence of any war conditions affecting Japan and her ports of entry, there could be but little question that the respondent could have legitimately declined to carry the flour."

This contract was breached prior to the United States entering into the war, so questions which might arise by reason thereof under the clause of the contract need not be considered, nor need we consider a situation where there has been an actual confiscation, arrest, or seizure

which might afford a ground of defense for failure to perform the contract because a situation would be created which would be "contingencies beyond the seller's control."

Therefore, finding, as I do, that the defendant has breached the contract and is liable therefor, I shall not consider the question of apportionment as made by the defendant and its claim to be relieved from its nonperformance by reason thereof.

The exceptions to the referee's report will be sustained, and the motion to confirm will be denied.