### In re BOSTON OPERA CO.

### In re SMITH.

(District Court, D. Massachusetts. January 26, 1918.)

#### No. 22206.

CONTRACTS ⨷258—CLAIM FOR SALARY—CANCELLATION OF CONTRACT—"PUBLIC CALAMITY OR CASUALTY"—EUROPEAN WAR.

In the spring of 1914 bankrupt, an opera company, contracted for the services of claimant as a musician for the ensuing opera season in Boston, commencing in the following December. The contract contained a provision that "in case of riot, fire, railroad accident, public calamity, or other casualties, over which the party of the first part has no control, this contract may be canceled at the option of the party of the first part." In November bankrupt notified claimant of the cancellation of the contract, on the ground that the general state of war existing in Europe made it impossible to maintain opera in Boston during the season. *Held*, that such war, although the United States was not then a party to it, was a public calamity and casualty over which bankrupt had no control, within the meaning of the contract, and so affected the performance of opera in Boston as to justify its abandonment and the cancellation of the contract.

In Bankruptcy. In the matter of the Boston Opera Company, bankrupt. On review of order of referee disallowing claim of Walter M. Smith. Affirmed.

Swift, Friedman & Atherton, of Boston, Mass. (Lee M. Friedman, of Boston, Mass., of counsel), for claimant creditor.

Goodwin, Proctor & Ballantine, of Boston, Mass. (Herbert L. Barrett, of Boston, Mass., of counsel), for estate of Eben D. Jordan and others, creditors.

HALE, District Judge. This case is before me on a petition to review the order of the referee disallowing the claim of Walter M. Smith for services as a musician, under a contract dated April 14, 1914, between him and the Boston Opera Company, in which the Opera Company is named as party of the first part, and Mr. Smith is party of the second part. By this contract Mr. Smith is employed as a "third trumpet," to perform, if required, at all operas, etc., during the opera season commencing in Boston in December, 1914.

Clause 11 of the contract is as follows:

---

⨷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"(11) In case of riot, fire, railroad accident, public calamity, or any other casualties over which the party of the first part has ,no control, this contract may be canceled at the option of the party of the first part."

The European war broke out August 1, 1914. On November 9, 1914, the Boston Opera Company sent to Mr. Smith a notice terminating the contract, calling attention to the general state of war existing in Europe, and the consequent inability and impossibility of the management to maintain opera in Boston under these conditions. By an agreed statement of facts the court is permitted to "take judicial notice of any and all events of public notoriety connected with the European war and its effect upon the United States and other nations of the world." The referee held that the European war, practically a world war, was such a public calamity and casualty over which the party of the first part had no control as justified the management, under the eleventh clause, in terminating the contract.

The learned counsel for Mr. Smith contends that the contract did not contemplate a war in which the United States was not a party as being such a public calamity and casualty as justified the Opera Company in terminating the contract.

In Richards v. Wreschner, 156 N. Y. Supp. 1054, 1056, 1057, the court had before it a contract wherein a German firm, in January, 1914, agreed to sell Belgian antimony, to be shipped at the rate of 15 tons per month up to September, 1914, inclusive. As a reason for failure to make deliveries after July 31, 1914, the defendant alleged that the production of antimony at a particular factory in Belgium ceased because of the war; that all exports of antimony over the German frontier had been forbidden; and that the seller became an enemy of the kingdom of Belgium, commercial intercourse being forbidden between Belgium and Germany, so that performance of the contract was impossible. But it did not appear that the defendants could not have provided themselves with a sufficient supply to make all deliveries from some European port, or that they could not have procured the antimony from a warehouse in a neutral country of Europe. The court said it was obvious that the defendant was improvident in entering into a contract of this kind without inserting a condition covering the interference of war, strikes, or other causes beyond their control. It held that impossibility due to a foreign war is no excuse for nonperformance of a contract. Ashmore v. Cox [1899] 1 Q. B. 436; Tweedie, etc., Co. v. McDonald Co. (D. C.) 114 Fed. 985; Beebe v. Johnson, 19 Wend. (N. Y.) 500, 32 Am. Dec. 518; Avery v. Bowden, 5 Ellis & Blackburn (Q. B.) 714; Standard Silk Dyeing Co. v. Roessler, etc., Chemical Co. (D. C.) 244 Fed. 250.

In the case before me, the contract contained a condition covering causes beyond the control of the contracting parties. It seems clear to me that the intention of the parties was that the Opera Company should have the right to terminate its contract whenever any public calamity or other casualty should occur, over which it had no control, and which prevented the giving of opera under the conditions prevailing when the contract was made, and which put a substantial

burden on the Opera Company greater than the parties contemplated. Thaddeus Davids Co. v. Hoffman-La Roche Chemical Works, 97 Misc. Rep. 33, 160 N. Y. Supp. 973; Davis v. Columbia Coal Mining Co., 170 Mass. 391, 49 N. E. 629. I think it would be too narrow a construction of the contract to say that no war should be held to be a "public calamity or casualty over which the parties had no control," unless it be a war in which the United States itself is engaged. At the time this contract was to be carried out, the European war had become a great world war. It had changed the Opera Company's position in reference to performing the contract relating to the maintaining of opera in Boston. It is clear that the existence of such war affected the performance of opera in Boston. I think it must be held to have been, in Boston, in the opera season of 1914 and 1915, a public calamity and casualty over which the Opera Company had no control, and which affected its rights under the contract in question. I think the referee was right in disallowing the claim.

The order of the referee is affirmed. The claim of Walter M. Smith is disallowed.