(79 South. 484)

### CAPITAL FERTILIZER CO. v. ASHCRAFT-WILKINSON CO.
#### (8 Div. 45.)

(Supreme Court of Alabama.   June 6, 1918.)

1. SALES ⊝⇒91—PROVISIONS FOR CANCELLATION—CONSTRUCTION.

A contract for the sale of fertilizer material to be imported from mines in Germany, reciting that it was "understood that in case of war * * * then the seller has permission to cancel his contract," did not refer to any war anywhere, but to a war either in this country or in Germany, and gave the seller an absolute option to cancel the contract in case of such war.

2. SALES ⊝⇒412—ACTION FOR BREACH—COMPLAINT—SUFFICIENCY.

In an action by a purchaser for the seller's breach of contract to deliver fertilizer material on the ground that he had an option to cancel the contract in case of war, the seller's plea setting out such fact was not demurrable for failing further to set out that the war proximately prevented the fulfillment of the contract.

3. CONTRACTS ⊝⇒270(1) — RESCISSION — REASONABLE TIME.

Where the right to rescind or cancel a contract is reserved to one of the parties by its

---

terms, and no time is specified, the right must be exercised within a reasonable time.

4. CONTRACTS ⚖️270(3)—RESCISSION—QUESTION FOR JURY.

What is a reasonable time for the exercise of an option to rescind a contract is generally a question for the jury.

5. SALES ⚖️412—RESCISSION OF CONTRACT—TIME—PLEA—SUFFICIENCY.

In an action by a buyer for the seller's failure to deliver fertilizer material, he canceling the contract on October 17, 1914, because of war declared August 1, 1914, as allowed by the contract, a plea by defendant based on such provision, but alleging no reason for the delay in cancellation or that it was within a reasonable time, was demurrable.

Anderson, C. J., and Mayfield and Sayre, JJ., dissenting in part.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Action by the Capital Fertilizer Company against the Ashcraft-Wilkinson Company, for breach of contract. From a nonsuit rendered on overruling demurrers to defendant's plea, plaintiff appeals. Reversed and remanded.

The case is very succinctly stated in brief of counsel for appellant, which is accepted as correct by opposing counsel, and is as follows:

"This is an appeal from a judgment of nonsuit rendered necessary by the action of the trial court in overruling demurrers to defendant's plea.

"The complaint contains two counts, the first of which claims $30,000 damages for the breach of a contract entered into between the plaintiff and defendant on May 25, 1914, by the terms of which the defendant sold to plaintiff 1,485 tons of potash, manure salts, and kainit, for deliveries in November, 1914, and February, 1915. The second count of the complaint claims $3,500 for the breach of a contract between the plaintiff and defendant entered into on July 11, 1914, by which the defendant sold to plaintiff 200 tons of manure salts for delivery during the period from August to November, 1914, at the seller's option. Both counts aver that the defendant has failed and refused to deliver to plaintiff any of the goods sold to plaintiff by said contracts. Both contracts contain the following clause: 'It is understood that in case of war, rebellion or any interference by either the American or foreign government, strikes, accidents, epidemics or other contingencies happening to one or more of the mines or works furnishing or shipping the goods or any part thereof mentioned in this contract, or in case of any other contingency beyond their control, then the seller has permission to either cancel this contract or such part thereof as may be affected thereby, or to make such shipments after the removal of said impediment, but not later than thirty days after the months originally fixed.'

"The defendant's plea sets up that since the execution of the contracts, one of the contingencies named therein as a ground of cancellation by the defendant had happened, in that, on the 1st day of August, 1914, a state of war arose between the German government and the governments of England, Russia, and France; that subsequent to the beginning of said war, and on the 7th day of October, 1914, the defendant canceled said contracts in writing.

"The plaintiff demurred to defendant's plea, assigning many grounds of demurrer, the main points raised being: (1) The failure of the plea to aver that the existence of war was the proximate cause of defendant's failure to perform the contract; (2) because for aught that appeared, the defendant was able to comply with the contract, notwithstanding the existence of the state of war alleged; and (3) because the plea shows that defendant did not attempt to cancel the contracts until October 17th, more than 2½ months after the outbreak of war. No facts are alleged explaining the delay, and no averment is made that such period was a reasonable time."

The contracts also contain the following provisions:

"*Analysis.*—The foreign analysis as furnished by the mines producing the potash shall be accepted as binding upon both buyer and seller," and "any import, export or differential duty or charge imposed by the United States or German government, or any war insurance risk affecting deliveries under this contract, shall be borne by the buyer."

Rushton, Williams & Crenshaw, of Montgomery, and C. P. Hatcher, of Columbus, Tenn., for appellant. Ashcraft & Bradshaw and Mitchell & Hughston, all of Florence, for appellee.

GARDNER, J. It is insisted by counsel for appellant that, under the terms of the contract here in question, the defendant could only cancel the same in the event of war which proximately prevented it from performing its contract—citing the following authorities: Ducas Co. v. Bayer Co. (Sup.) 163 N. Y. Supp. 32; Smokeless Fuel Co. v. Seaton, 105 Va. 170, 52 S. E. 829; Milliken v. Keppler, 4 App. Div. 42, 38 N. Y. Supp. 738; Lima Locomotive Co. v. Nat. Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713; Standard Silk, etc., Co. v. Roessler Chem. Co. (D. C.) 244 Fed. 250; Bache Co. v. Coppes, etc., Co., 35 Ind. App. 351, 74 N. E. 41, 111 Am. St. Rep. 171;. Cottrell v. Smokeless Fuel Co., 148 Fed. 594, 78 C. C. A. 366, 9 L. R. A. (N. S.) 1187—and that to construe the contract as giving the absolute right of cancellation in the event of war anywhere, without regard to its effect upon the ability of the seller to comply with the terms of the contract, would be both unusual and unreasonable.

The argument to the contrary is that the parties have, by the language used, created an absolute option to cancel the contract upon the happening of certain specified contingencies, one of them being "in case of war," and that the parties "meant what they said and said what they meant" when they placed this absolute option in the contract; that it means war—any war, anywhere; that in using the language plain and unambiguous, the parties have exercised the constitutional freedom of the contract, and they had the right to specify the event of any war anywhere as a signal for a right to cancel on the part of the seller. The following authorities are cited by appellee as bearing upon this phase of the question: Black on Rescission & Cancellation, § 517; Barney v. Delta & Pine Land Co., 105 Miss.

320, 62 South. 355; **J. I.** Case Threshing Mach. Co. v. Nickley, 72 Kan. 372, 83 Pac. 970; Hypse v. Avery Mfg. Co., 32 Tex. Civ. App. 409, 74 S. W. 812; Lyons v. Stils, 97 Tenn. 514, 37 S. W. 280; Thaddeus Davids Co. v. Hoffman La Roche Co., 97 Misc. Rep. 33, 160 N. Y. Supp. 973; Herrmann v. Bower Chem. Mfg. Co., 242 Fed. 59, 155 C. C. A. 3; Aldine Press v. Estes, 75 Mich. 100, 42 N. W. 677; Foster v. Henderson, 29 Or. 210, 45 Pac. 899.

While the argument of counsel for appellee most strenuously insists that the plain and unambiguous language of the absolute option given the seller in the contract here in question must be taken for its full value, and is not open to construction, it is further urged that, if open to construction at all, it would only be to the extent of ascertaining from the terms of the contract, if sufficient for that purpose, what war was in contemplation by the parties at the time of the execution of the contract. It is further insisted that the furthest point in construction to which the court would be authorized to go would be that the parties contemplated, by the language used, a war either in this country or in Germany—the country from which the products were to be obtained.

The cancellation clause here in question contains several alternatives, but, omitting for the present those with which we are not here concerned, we confine ourselves to the following clause set up in the plea:

"It is understood that in case of war, * * * then the seller has permission to cancel this contract."

It is clear from the provisions of the entire contract that the products (potash, manure salts, and kainit), the subject of this sale, were to be imported from a foreign country, and, further, that by reference to that country in the contract, and to the foreign mines from which such products were to be obtained, in connection with the judicial notice of the scientific facts of the location of the mines producing potash, it can very reasonably be inferred that the products were to be obtained from the country of Germany. The contract provides for a differential duty or charge imposed by the United States or German government, and that the foreign analyses furnished by the mines producing the potash shall be binding. The cancellation clause refers to rebellions, or any interference by either the American or foreign government. Reference is also made to loss from wear and tear of bags during the voyage, and that the goods are to be taken by the buyer "ex-vessel, when ready to discharge, without expense to seller for wharfage or covering on same."

[1] We are of the opinion that this part of the cancellation clause here in question is properly construed as having reference to a war either in this country or in Germany, from which latter country it sufficiently appears the products were to be obtained. Having reached this conclusion, therefore the next question for consideration is that urged by counsel for appellant that the war, within the meaning of the words in the cancellation clause, must be such a war as proximately prevented the seller from performing the terms of the contract.

We have very carefully examined the authorities for the appellant, above cited, but will attempt no review of them here. It is to be noted, however, that the language used in the contracts there under consideration was very different from that in the instant case. In those cases the language used clearly indicated that the contracts were made either subject to or contingent upon strikes, accidents, or contingencies beyond the seller's control, and necessarily required construction to ascertain the meaning. The language above quoted gives the seller the absolute option to cancel the contract in case of war. The parties were capable of making their own contract, and thereby creating their own law by which they were to be governed. The authorities cited by counsel for appellee tend very strongly to sustain the binding force and effect of this clause as an absolute option, and as having precluded inquiry as to its effect upon the ability of the seller to deliver the goods sold. The following excerpt from Black on Rescission & Cancellation, § 517, also sustains this view:

"When a right to rescind, reserved to one of the parties in a contract, is made to depend upon the happening of a certain event or contingency, it can be exercised only in the case provided for, not arbitrarily nor on the mere will of the party, nor for any other reason than that specified in the contract. * * * But on the other hand, if the particular event occurs, it is immaterial how little relation it may appear to have to the substance of the contract, or how unreasonable it may seem to be to make the continued existence of the contract depend upon it. If the case arises in which the right to rescind was reserved, that right may be exercised, the parties having so contracted."

In Hypse v. Avery Mfg. Co., supra, the plaintiff gave a written order to defendant for an engine, agreeing to pay therefor some cash, and another engine. The order contained the clause giving the defendant the right to cancel it at any time before the shipment of the engine without liability for damages. The order was accepted by the defendant, and plaintiff prepared the engine he was to give in exchange for shipment, but the defendant refused to fill the order. The plaintiff had gone to the expense of moving the engine to the shipping point, and was prepared to make the cash payment. The court held that the cancellation clause was not against public policy, but was a stipulation which the parties might lawfully make; that it was plain and unmistakable and could not be disregarded, and therefore the defendant was not liable. In the case of

Barney & Hines v. Delta & Pine Land Co., supra, the contract for the sale of land provided:

"In case any stockholder of the party of the first part, not having already consented thereto, shall bring suit against the party of the first part, or its officers or directors, to prevent the carrying out of the provisions of this contract, * * * then the said party of the first part, or the officers or directors, may declare this contract void."

Before the consummation of the contract a stockholder of the first party brought suit and enjoined the sale, and the contract was thereupon declared to be void. The Supreme Court of Mississippi in this connection said:

"After filing his bill and obtaining service of process thereon, this stockholder proceeded no further with the prosecution of his suit, and there was some evidence introduced tending to show that it has since been dismissed by the court for want of prosecution. The failure to prosecute this suit is immaterial. The right of appellee to decline to execute the contract depended, not upon the successful prosecution of such a suit, but only upon the bringing thereof; the language of this clause of the contract being, 'In case any stockholder * * * shall bring suit,' etc. The merit or want of merit of this stockholder's suit is also immaterial; it being the clear intention of the parties that appellee should not be required to execute the contract in event any of its stockholders should be dissatisfied therewith, provided this dissatisfaction was manifested in a particular way. Appellee was within its rights, therefore, in declining to carry out this contract after it had been enjoined by one of its stockholders from so doing."

[2] We have construed the portion of the clause here in question as having reference to a war either in Germany or in the United States, and we are urged to go further into the construction and hold that it is meant that the war must be such as to proximately prevent the fulfillment of the contract. This we are unwilling to do. We must gather the intention of the parties from the language used, and we do not think that such construction is justifiable here. Without the protecting clause, the seller was under the duty of delivering these products, and any difficulties, however great, due to a foreign war would be no excuse, and that the courts would not consider the hardships, expense, or loss to the seller on account thereof. As said in Cameron-Hawn Realty Co. v. Albany, 207 N. Y. 377, 101 N. E. 162, 49 L. R. A. (N. S.) 922:

"If what is agreed to be done is possible and lawful, the obligation of performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance."

See, also, Standard Silk, etc., Co. v. Roessler Chem. Co., supra.

The effect of the war in Germany or in this country upon the ability of the seller to comply with the contract here in question was, of course, an unknown quantity, as well as its effect upon the transportation of goods, the risk incurred, the price of goods, and the freight rates; all of these in case of war are left in a state of uncertainty. True, it may be possible that the seller could procure the goods for deliveries under his contract, but only upon payment of exorbitant and  nous prices and freight rates. It is also true, on the other hand, he may have had the goods in sufficient quantities in store to comply with his contract, and yet he may have had numerous other contracts of the same character, with a supply insufficient for all, and be presented with the question of his right to prorate the amount on hand—a situation presented the sellers in Standard Silk, etc., Co. v. Roessler Chem. Co., supra, and also in Ducas Co. v. Bayer, supra. It is therefore not merely the question of ability to obtain the goods, but also the question of the great risk, in the happening of such events, both as to prices and freight rates.

If the argument of counsel for appellant should be accepted, that is, the war must be such as to proximately prevent the delivery of goods, it will be difficult to lay down the line or prescribe the exact boundaries of the duties of the seller. The inquiry would naturally arise: To what extent will it be said that the defendant must show he was prevented by war; and, if he is not required to have been prevented absolutely, to what extent must he go, and what risks must he be willing to run in order to be relieved of liability? But the seller, in our opinion, in the instant case has closed the inquiry to all these matters by the insertion of the cancellation clause. We think, upon consideration, that the cancellation clause was not without some reason and business sagacity for its foundation, and that it was inserted for the seller's protection and with a sense of business prudence; and to give it the construction contended for by appellant would be to largely destroy its effect, and deprive the seller of the protection evidently intended.

The parties were sui juris, and there is nothing in the provisions of the contract against morals or public policy, and, as said in the very old case cited in brief of counsel for appellee:

"The contracts of men are laws prescribed by themselves to govern their transactions with each other, which, as long as they interfere not with morality, or [with] the interests of third persons, are of conclusive obligation on the immediate parties to them." Gill v. Kuhn, 6 Serg. & R. (Pa.) 333.

The foregoing discussion relates to the assignment of demurrer taking the point that the plea failed to aver the existence of war was the proximate cause of defendant's failure to perform the contract. And this, in substance, is the only attack made upon the plea in the assignment of demurrer, and argued by counsel for appellant, except the question as to whether or not the cancellation was shown to have been had within a

reasonable time, which is hereinafter considered.

We will now briefly consider the other clause in the contract, which appellant insists supports its contention. The argument is advanced that the clause in the contract, "then the seller has permission to either cancel this contract or such part thereof as may be affected thereby," discloses by the use of the words "affected thereby" that the state of war, which would give rise to the right of cancellation, must have been such a war as would proximately prevent a performance of the contract by the seller. What we have herein said sufficiently shows that in our opinion this construction is unwarranted.

The question of price was also a matter of very material consideration, and it may be seriously questioned that the words "affected thereby" bear any relation to the entire contract, but only to such part thereof as the seller might desire to cancel. However this may be, and conceding (without deciding), for the purposes of this discussion, that these words are to be construed as applicable to the entire contract, yet it would not result that the seller must show that he was by such war proximately prevented from delivering the goods, for these words may be very reasonably construed as having reference to any material effect upon the price of the articles contracted to be delivered. In other words, the words "affected thereby" may very reasonably be construed as meaning not only as materially affecting the ability of the seller to perform the contract, but also as materially affecting the price of the articles contracted to be sold. This latter question is not presented by any assignment of demurrer, and is not argued by counsel for appellant in their brief. So that, therefore, whether or not the plea is defective for failing to aver that the war, set up as a cause for the cancellation of the contract, was such as would materially affect the price of the commodity agreed to be sold is not here presented for consideration, the parties confining themselves to the point relating solely to the question of delivery or performance of the contract. We conclude that in any event this language cannot be reasonably concluded to have application solely to the question of the seller's ability to perform the contract by a delivery of the goods. We are therefore of the opinion that the assignment of demurrer first herein discussed was not well taken, and was properly overruled. In these views Justices MAYFIELD, SOMERVILLE, and THOMAS concur with the writer, while Chief Justice ANDERSON and Justice SAYRE do not concur, but are of the opinion that the plea was subject to the assignment of demurrer interposed thereto.

The other question presented in the case relates to the following assignment of demurrer:

"Because the plea shows that the defendant did not attempt to cancel the contract until October 17th, more than 2½ months after the outbreak of the war, no facts are alleged explaining the delay, and no averment is made that such period was a reasonable time."

[3, 4] Where the right to rescind or cancel a contract is reserved to one of the parties by its terms, and no time is specified, the right must be exercised within a reasonable time. Davidson Hdw. Co. v. Delker Buggy Co., 170 N. C. 298, 86 S. E. 958; Paulson v. Weeks, 80 Or. 468, 157 Pac. 590; Comer v. Franklin, 169 Ala. 573, 53 South. 797; 2 Mechem on Sales, 686. What is a reasonable time is generally a question for the jury. 35 Cyc. 150; Millsapp v. Woolf, 1 Ala. App. 599, 56 South. 22.

The effect of overruling the above assignment of demurrer to the plea was to hold, as a matter of law, the period from August 1, 1914, when the state of war arose, to October 17, 1914, when the contract was canceled, was a reasonable time within which the defendant had the right to exercise the option to cancel the contract. This, as we have previously stated, is generally a question for the jury, unless facts are averred from which the court may say from the particular or special facts the time is reasonable or unreasonable as a matter of law. No facts or circumstances surrounding the parties in this case are set forth either in the complaint or in the plea, which would add anything to this question. For aught that appears in the plea, the defendant at all times, from the very day the war was declared and afterwards, knew of its inability to procure the products from abroad, and knew of its inability to comply with the contract on that account, or had determined upon the course it would pursue with respect to the option of cancellation here in question. Although notice of cancellation was given prior to the date delivery was to be made, yet due regard to the rights of the buyer required the exercise of the option by the seller within a reasonable time after the happening of the event creating the right of cancellation; and this question, as stated, is generally one for the jury's consideration.

[5] The plea setting up the time elapsing from the declaration of war to the time of the cancellation of the contract, and alleging no reason for the delay, or any facts indicating that the cancellation was had within a reasonable time, was subject to the above assignment of demurrer, and for the overruling there of the judgment of the court below will be reversed.

In the foregoing views as to the third assignment of demurrer, noted in the statement of the case, all the Justices participating in the consultation of this cause concur, except Justice MAYFIELD, who is of the opinion that the seller had until the time for

the delivery of the goods within which to exercise the right of cancellation, and that, therefore, the plea was not subject to the demurrer interposed. He is also of the opinion that if there was any peculiar reason why the seller should have exercised this option at an earlier date, this was a matter to be brought forward by replication. He therefore thinks the cause should be affirmed, and for this reason only dissents.

It results from the majority holding that the judgment must be, for this error, reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, SOMERVILLE, and THOMAS, JJ., concur in result of reversal. SOMERVILLE and THOMAS, JJ., concur in opinion. ANDERSON, C. J., and MAYFIELD and SAYRE, JJ., in part dissent. McCLELLAN, J., not sitting. .