STONE *versus* DENNIS.

QUESTIONS IN THIS CASE.

*The effect of an agreement to arbitrate a claim, upon the right of action thereon.*

*Whether covenant lies for the breach of a contract, contemplating a copartnership.*

*As to the breach of covenants difficult to be performed.*

*As to the plea of performance of covenants.*

*Excuse for breach of covenant—how far available, in mitigation of damages.*

1. A covenant in an agreement, to submit matters of difficulty, arising thereon, to arbitration, does not preclude a party from a right of action, for a breach thereof---no arbitration pending at the commencement of the suit, and no award being had.

2. Where parties enter into covenants, which contemplate a future co-partnership, an action for a breach, may be maintained at law, by either of the parties, for a breach committed by one, before the co-partnership has commenced.

3. And, it seems, that covenant is sustainable, even in the case of a co-partnership, for a breach of any article, which either party covenants to perform.

4. A party, covenanting, on sufficient consideration, to perform acts, not, on their face, impossible, illegal or. immoral; and, no showing being made, that these results have accrued---will be held to their performance, notwithstanding the difficulty attending them, or the hardship of the particular act.

5. One sued for breach of covenant, cannot, under the plea of covenant performed, avail himself of the difficulty of performing his covenant, in excuse.

6. Where a party covenanted to perform certain acts, necessary to effect the building of mills on his own lands, and it appeared, that the covenant contemplated a canal to be cut, on adjoining lands---it was held, in an action against him, for a breach of his covenant in abandoning the contract, that he was not entitled to prove, in mitigation of damages, that the

adjoining lands were owned by strangers—no other evidence appearing in the cause to explain the particular effect intended, and, under the facts, the testimony appearing isolated and irrelevant.

In error from Mobile Circuit Court.

This action was covenant, by Dennis, and was instituted for the recovery of damages, for a breach of an agreement entered into, between the parties.

The declaration charged, that Stone and Dennis entered into a covenant, dated the 21st February, 1831, by which it was recited, that Stone, having, before that time, purchased a tract of land, for the sum of two thousand dollars, and being desirous to erect certain saw-mills thereon, had engaged Dennis to superintend the building thereof, and to carry them on, when built. Stone obligated himself to furnish negroes at fifteen dollars per month, and pay all expenses for their support—to pay overseer, &c. and to pay the necessary workmen, and for the necessary tools, &c. That Dennis was to superintend the building of the mills, and, when done, he was to superintend the carrying on of the mills. That when the mills were done, the whole amount of the expenses was to be ascertained, and Dennis was to be charged with one third of the amount, including the price of the land, for which he was to have a credit of one, two and three years. That he was to be entitled to one third of the profits, which should go towards the payment of the amount due by him; and he was to be liable, also, for one third of all losses.

It was also provided, that, if either party should become dissatisfied, he should give notice to the other; and, each party obligated himself, to appoint an

an arbitrator within five days after notice—that if the arbitrators disagreed they should appoint an umpire, and that these arbitrators should settle and adjust all differences ; and it was expressly understood that in the event of the failure of either party to appoint his arbitrator within five days after notice, or failure of either party to comply with his agreement, the party in default should pay to the other one thousand dollars as liquidated damages, and each bound himself to the other in the penalty of one thousand dollars.

The plaintiff averred that Stone had broken his covenant, in failing to provide hands, &c. &c.—that he, Dennis, had performed his contract on his part ; that on the fifth of September, 1831, he gave notice to Stone that he was dissatisfied; and that each party did appoint one arbitrator; that the two arbitrators could not agree, and that they mutually selected an umpire who would not serve—so that no award was made. The plaintiff averred, therefore, that the covenant was broken.

The defendant, Stone, demurred to the declaration. The demurrer was overruled : he then pleaded, 1st, performance ; 2d, that the plaintiff failed to perform.

On the trial, the defendant took a bill of exceptions—by which it was shewn, that Stone commenced the work in February, 1831, and furnished eight or nine negroes, and a white man to superintend them. It was proved that it was necessary to carry into effect the building and completing the mills, to conduct water from eight mile creek, about the distance of three or four miles, to the place where the

mills were to be built, by means of a canal from eight mile creek to the mills. It was proved that the defendant had abandoned the work in June.

The defendant offered to prove that the lands on both sides of the creek belonged to private individuals, as well as the lands through which the canal would have to pass, and over which neither the plaintiff or defendant had any control.

This evidence the Court rejected—and to this, the defendant excepted.

The plaintiff in error, insisted—

That the Court erred in overruling the demurrer.

That the parties having stipulated for a particular remedy, in case of disagreement, they were confined to that remedy, and must pursue it.

That if the remedy provided by themselves, had not been available, and this without the fault of Stone, that he was not liable to an action; that Dennis should abide by his contract, and by his remedy ; and if insufficient he should abide the loss.

That as it was found impossible to build the mills without committing trespasses on the lands and rights of others, Stone had the right to abandon the contract.

That in such a case, Stone was not bound to go beyond what he expressly undertook to do by his covenant; and an illegal act, could not, by implication, be added to his contract.

Argued by _Mr. Stewart_, for the plaintiff in error, and _Mr. Goldthwaite_, for defendant.

HITCHCOCK, J.—This was an action of covenant, brought by the defendant in error, against the plaintiff, to recover damages for the breach of a contract

entered into between them. The declaration sets out the contract at large ; it is very long, and contains many provisions, not necessary to be noticed in this investigation.

The substance of so much as is necessary, is as follows, to-wit : That Stone being desirous of erecting certain saw mills upon a tract of land he had then recently purchased, situated between Bogue Homo and Chickasaw Bogue, at a place called the Ship Landing, in the county of Mobile, had, for that purpose, engaged the services of Dennis ; that Stone was to furnish as many negroes as he conveniently could, to be employed in preparing to build said mills, until they should be fully completed, and to continue them thereafter during the period of the agreement, at the rate of fifteen dollars a month, by the year, as hire, and also the necessary workmen, and all the moneys and funds requisite for the support of the negroes, and to pay the wages which might be contracted to be paid by the parties, to such overseer and workmen, as they might jointly think proper to employ in the execution and completion of of the said mills ; and likewise for alld and very kind of materials, useful and necessary in the construction and completion of the same ; also all necessary working tools and implements to be employed thereat ; the whole amount of which expenses to be borne and paid by Stone in the first instance, including the sum of two thousand dollars, the price and value of the land, which was supposed to contain about one thousand acres : that so soon as the said mills should be completed and put in operation, the whole cost of the work should be ascertained, one-third part of which, including the land should be

charged to Dennis, who should from thence become interested, to that amount in the property, and who should have that share in the profits, and bear that proportion of the losses, which might happen; that the payments for this third interest, should be in three annual instalments, without interest.  The contract further provides, that after paying the sums to be due, he should be entitled to purchase an interest of one-third in the negroes, furnished by Stone, upon payment of which, he (Dennis) should be entitled to a quit claim deed to the lands and mills, and a warrantee title to the slaves to the extent of his interest.  There was, however, a reservation in favor of Stone, of the use of fifty acres, for the purpose of a brick yard, and the use of the slabs sawed, and timber not fit for saw logs, for fire wood for the brick yard, free of charge to Stone.  The contract further stipulates, that in case Dennis should be discharged from the superintendance of the water works, then being erected by the city of Mobile, and for whom he was then engaged, he should contribute his whole and undivided attention to the erection and construction of the said mills, superseding thereby the employment of an overseer, in which event Dennis was to be paid at the rate of six hundred dollars per annum.  In consideration of which covenants on the part of Stone, Dennis covenanted to give, from time to time, the necessary attention and superintendance, in the construction of the works, free of any charge, (except in case of his becoming overseer as aforesaid) and that upon the completion of the works, he was to superintend them free of charge, except for his board, which should be at the expense of the establishment.  It was further stipulated, that in case of

any disagreement between them, as to the settlement of the accounts for the expenditures in erecting and completing the mills; or in case either party should become dissatisfied with the other at any time, the dissatisfied party should notify the other, in writing, of the cause or causes of such dissatisfaction, and of his desire of having the same adjusted — upon which, arbitrators should be chosen, one by each party, within five days after such notice, to whom the case should be referred; and in case of their disagreement, they should choose an umpire, who should settle the controversy. It being agreed that in case either party should fail or refuse, for five days, to nominate as aforesaid, his arbitrator, he should forfeit one thousand dollars as stipulated damages.

The plaintiff avers, that he performed his part of the agreement, as far as he could; that he was discharged by the corporation of Mobile, and devoted about ten months to the constructing of a canal to supply water for the mills; and, that he was, at all times, ready and willing to have fully complied with his part of the contract; but, that Stone did not furnish as many hands as he conveniently could, and, that he finally withdrew them all, and abandoned the work entirely. He further states, that, being dissatisfied with Stone, he notified him, under that part of the agreement, by which they were to refer the case to arbitrators; that two were chosen, who could not agree in their award, and that they could not agree in the choice of an umpire; and that, consequently, the case could not be settled in that way: and he claims damages, by suit, for the, alleged breaches, by the defendant, of his part of the covenants.

To this declaration, the defendant pleaded—first, performance of his covenants; secondly, failure, by the plaintiff, to perform his part of the covenants; upon which pleas, issue was joined. It does not appear that any demurrer was filed; but there is an entry upon the record, at the Spring Term, 1833, of the Court, that the defendant's demurrer to the plaintiff's declaration, was overruled—at which term a trial was had, and a verdict was given in favor of the plaintiff, for eight hundred dollars, and judgment thereon was entered.

At the trial of the cause, a bill of exceptions was taken by the defendant, which states, that it was proven, that, in pursuance of the contract, Stone commenced the work, in February, 1831, furnished as many as eight or nine hands, as many as he conveniently could, and a white man, to superintend them. That it was necessary, for the purpose of carrying into effect the building and completion of the mills, to conduct water from Eight-mile Creek, about the distance of three or four miles, to the site, on which the mills were to be erected, by means of a canal, from said Eight-mile Creek, to said mills.— It was further proved, that the work was abandoned by Stone, in the month of June following. That the defendant then offered to prove, that the lands, on both sides of Eight-mile Creek, belonged to private individuals, and that neither Stone nor Dennis had any control over the same. That he further offered to prove, that a part of the lands, through which the canal must necessarily run, also belonged to, and was the property of private individuals, and over whom neither Stone or Dennis had any control;

but, that the Court refused to permit this proof to go to the jury, to which the defendant excepted.

The counsel for the plaintiff in error has contended that the judgment should be reverted—

First—on the ground, that the demurrer to the declaration should have been sustained; and,

Secondly—that the evidence offered, and rejected, should have been received.

As to the first ground, he has made two points.

1. That, the parties having stipulated, to refer the matters which might grow out of the contract, to arbitrators, to be selected by themselves, had each, thereby, precluded himself from resorting to any other tribunal, and, that, if the remedy proved insufficient, he must abide the loss.

2. That the contract involves, necessarily, the settlement of partnership accounts, and, that, consequently, no action will lie, at law, for damages.

1. These points are not pressed with much earnestness, but, if they were, it is quite evident, they cannot be sustained. In relation to the first point, it is clear, that a party, by agreeing to submit his case to arbitration, does not loose his remedy at law, unless, at the time of the commencement of his suit, there is an arbitration pending, or an award has actually been made; and a contract, absolutely to waive one's right to go to law, is void, as against public policy.[a]

In this case, neither party was in fault: no award could be obtained from the arbitrators; and there is no pretence, why the plaintiff should not be heard, in a Court of law. Besides this, if there could be any doubt, upon general grounds ; in this case there could be none, for each party has stipulated a penal-

[a] 1 Wil.129; 2 Bos & Pul. 131— Gow 96,116 125 '6 '7; 5 Term Rep 141—8 ib. 139.

ty, which he would be liable to pay, in case he should refuse to arbitrate.

2. As to the second point, it does not appear, that there are, or can be, any partnership accounts between these parties, the contract having been abandoned before the completion of the mills. Dennis did not, in fact become the partner of Stone. There was, it is true, a partnership ultimately contemplated, but none had actually grown out of the contract.— But, even if there was a partnership existing, yet, the action of covenant can be sustained, for a breach of any article which the party had covenanted to perform.a

a Gow, 96.

2. In relation to the second point, the rejection of the evidence offered by Stone, it is contended—

First—That it was good, under the plea of performance, to shew the compliance of all that Stone could perform—or, rather, to shew a good excuse for not performing; and,

Secondly—If it was not good, for that purpose, it was good, in mitigation of damages.

1. As to the first point, sundry propositions are assumed, such as—

First—If the foundation of the covenant fails, all the stipulations under it, fail.

Secondly—If the covenant require things, unlawful to be done, the covenant is void.

Thirdly—If the nature of the duty varies, then then the obligation ceases.

Fourthly—When the consideration ceases, the liability ceases.

To support these positions, numerous authorities are referred to. But, as it is conceived by the Court, that, though the propositions all contain good law,

yet, as they do not apply to this case, it is not neces-sary, further to refer to them.

Where a contract does not contain, on its face, any thing impossible illegal or immoral, and where there does not appear to have arisen any thing subse-quent to the making of it, which renders it so, and it is founded upon a sufficient consideration, the par-ty making it is held to its performance. It is the duty of contracting parties, to provide against con-tingencies: they are presumed to know, whether the completion of the duty they undertake, be within their power. Therefore, to excuse them from the performance of their contracts, they must bring them-selves within some one of the above provisions.[a]— Without it, however hard the case may be, the par-ty is held to his contract.[b]

In the case under consideration, the ground taken, is, that the party is absolved from the obligation of this contract, because a part of the land, through which this canal was to pass, and the banks of the creek from which the supply of water was to be had, belonged to third persons.

A supply of water from this source, was evident-ly contemplated when the contract was made. It is admitted, that the construction of the canal was em-braced within the contract; and, that Stone was to furnish the hands, funds and materials, to construct it. He must have contemplated this contingency, and should have provided for it.

There is nothing illegal immoral or impossible, so far as appears, to prevent it. It does not appear, that there was any refusal, by the proprietors, or ap-plication to them, for the purchase of the land, or of a

[a] Chitty on Con. 14.

[b] 1 Term R. 312.

3 v. P.  31

right of way ; and, even if it did appear, that the performance of this contract had become impossible, from this cause, it would not absolve Stone from his contract. He had undertaken to furnish means to build those mills, and a supply of water was a necessary ingredient in this contract. He knew of this necessity, had deliberately contracted with Dennis, to accomplish it, and, if it should subsequently appear, that he was prevented, by the refusal of the proprietors of the land, to grant the privilege, he must abide by the consequences, and is answerable, in damages, for his failure.

Dennis was to furnish nothing, by his covenant, except his personal superintendance; and, if he chose to hold Stone to his contract, he could not set set up this kind of impossibility, in avoidance of his liability.

But, even if this defence could have been made available by Stone, in any event, it certainly could not, under the plea of performance : this defence can only be made, where the defendant has actually done all his contract calls for ; and if he has an excuse for his non performance, he must admit the breach to have been committed, and plead, specially, in what he is dischraged.[a]

There is no general issue, in covenant, such as there is in assumpsit, which will let in an equitable defence, but the party is held strictly to his plea.— There was, therefore, no error, in rejecting this evidence, on the first ground taken.

2. Was it good, in mitigation of damages ? The propriety of the exclusion of the testimony, in this view of the case, did not, at first, appear to me, so clear. Admitting the breach to have been established

a Chit. Pl. 524—Lit. Cases 135.

by the plaintiff, his recovery sounds in damages, and where they are not stipulated, or do not necessarily appear, from the circumstances of the case, the parties are at liberty to go into evidence, to ascertain the amount—each party, therefore, must have the privilege of giving evidence—the plaintiff to enhance, and the defendant to mitigate.

It is, however, a principle of law, well established, that a party, seeking, in a revising Court, to reverse the decision of the inferior Court, must present his case, in such a manner as to enable the appellate Court to see in what the error consisted : the judgment of the Court must be invoked, upon some principle of law, which is shown to have been violated, by the Court, whose judgment is impugned. It is not sufficient, that the judge may have erred, it should appear that he has erred : facts should be so presented, as to enable the revising Court to apply the law to them ; and, to do this, the relevancy of the testimony to the point to be established, must be made to appear—otherwise, the higher Court may make an improper application of the law to the facts, or of the facts, to the supposed law of the case; and hence, wander into errors, equally great as those which are sought to be corrected.

Having premised these remarks, let us inquire to what point before the Court below, the evidence could be made to apply. The bill of exceptions does not profess to state that it contains all the evidence given, neither does it allude to there being any other. It states certain facts to have been proven, and then states, that the defendant proposed to prove certain other facts, which he now says, were intended to go in mitigation of damages. Would the

facts, offered and rejected, taken in connection with those stated to have been proven, have aided the jury, in their estimate of damages? They clearly would not.

It was proven that a canal, three or four miles long, was required. This, it has been shewn, it was the duty of the defendant to have constructed. What aid could the other facts, to wit, that the lands were owned by third persons, give the jury, in ascertaining how much Dennis was entitled to, for his damage? Without other facts, such as the cost of the whole property, the amount to be paid, for the right of way, the probable amount of the profits or of the losses of the mills, and many other facts, which it is easy to imagine, none of which are stated to have been introduced by the plaintiff, and none of which were offered to be proved, by the defendant, (so far as we are advised,) how could the jury act advisedly, by being left to decide upon those which were offered and rejected? The jury would have been perplexed, and probably misled, by such testimony; and, it is not sufficient, for this Court to be told, that probably other testimony would have followed this, if it had been admitted, which would have shown its relevancy.

The defendant should have presentad, at least, so much of his testimony, as would have enabled the Court below to judge of its relevancy; and, until he did so, the Court was bound to exclude it. A party is not at liberty to require a Court to admit testimony, having no apparent relevancy, upon the suggestion, that he has something behind, that will bring out its relevancy : and, for the same reason, he cannot urge upon this Court, the supposition of er-

ror, in the Court below, when he does not shew in what the error consists.

In the case before us, Dennis had two grounds, upon which to rely, for damages : first, his loss of time, during which he was actually employed ; and, secondly, his loss of profits, by the non-completion of the mills, by Stone's default.

Now, the evidence offered and rejected, could not be applicable to the first; and, for ought that appears, no evidence of the latter, was offered by Dennis, at all—and, if it had been admitted, could not have varied the verdict.

If we were, therefore, to reverse and remand this case, with instructions to admit this testimony, what benefit could accrue to the defendant? If none is shewn here, then no cause of reversal is shewn, by its rejection. The rights secured to the plaintiff, by this verdict, are not to be disturbed ; unless we are satisfied they have been acquired at the expense of the rights of the defendant : and this, it is his duty to shew, before he can get relief at our hands.

This case has been brought here, to correct the *errors* of the Court below. We ask what those errors are ; and, they must be shewn : we are to presume in favor of the decisions below, unless they are shewn to be erroneous.

A bill of exceptions ought to be on some point of law—either in admitting or denying evidence, or a challenge, or some matter of law, arising upon a fact, not denied, in which either party is overruled by [a] 2 Caine's the Court.[a] And, there would have been, in this Rep. 169. case, much stronger grounds, for reversal, if the judge had allowed this testimony to go to the jury— as it might be said, with great truth, that irrelevant

testimony had been admitted, which might have had an improper influence upon the minds of the jury.

If, however, this Court is permitted to indulge in ·conjectures, as to the object of this testimony, I should say, judging from what is stated in the bill of exceptions, that it was not offered, or intended to be used; in mitigation of damages, in the Court below, but in support of the plea of performance, or, in avoidance of the contract—to either of which, it has been shewn, that it cannot apply. It is not stated, in the bill of exceptions, to what purpose it was offered. It has been, with much ingenuity of argument, attempted to be fastened upon some one point, by having been successively applied to all the points; to none of which, however, does it appear to the Court to have any legitimate application.

It is, therefore, the opinion of the Court, after an investigation of all the points made in the case, that the judgment be affirmed.