**CITY OF ALBERTVILLE, ALABAMA, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.**

No. 17746.

United States Court of Appeals Fifth Circuit.

Dec. 7, 1959.

Rehearing Denied Feb. 11, 1960.

---

Maurice F. Bishop, Birmingham, Ala., T. J. Carnes, Albertville, Ala., for appellant.

S. R. Starnes, Birmingham, Ala., Spain, Gillon & Young, Birmingham, Ala., of counsel, for appellee.

Before RIVES, Chief Judge, and BROWN and WISDOM, Circuit Judges.

RIVES, Chief Judge.

The appellee, The United States Fidelity & Guaranty Company, sued the appellant, City of Albertville, Alabama, seeking to recover $38,100 (and the interest thereon) which the appellant had withheld as liquidated damages (381 days at $100 per day) under a provision of a contract between appellant and appellee's principal requiring completion of the contract within a stated time (150 days extended to 164 days). Appellee claimed that the provision was void because it was impossible to complete the contract within the stated time. The case was tried before a jury which returned a verdict in favor of the plaintiff in the amount claimed, $38,100 to which was added interest calculated by the Clerk in the amount of $5,689.95; and judgment was rendered in favor of the appellee against the appellant for the total sum of $43,668.95. This appeal is from that judgment.

Appellee's principal, C. N. Mason, entered into a contract with the City of Albertville for the construction of a sanitary sewer extension. Appellee was the surety on Mason's performance bond and on his bond guaranteeing payment of labor and materials. Prior to bidding on the job, Mason secured a copy of the plans and specifications prepared by the appellant's engineer, which later became a part of the contract. The specifications called for the laying of about twenty miles of sanitary sewer pipe. Appellant's engineers had estimated the quantity of rock to be excavated at 5000 cubic yards. Actually, it proved to be a little more than three times that amount. The theory upon which the appellee recovered judgment was that it was impossible to excavate such a large amount of rock and to complete the contract within the 164 days.

Pertinent parts of the specifications [1]

1. "2.03. Interpretation of Approximate Estimates:

"Although the estimate of quantities of work listed in the Proposal Form are the results of calculations made from field surveys, they are to be considered as only approximate estimates of the quantities of the different pay items and are to be used only as a basis for comparing bids for awarding the Contract.

"Such quantities, including the classfication (sic) thereof, may or may not be representative of the actual conditions encountered during construction and the Owner does not guarantee that the approximate quantities given will hold strictly in the construction of the work.

"Final payment to the Contractor will be made for only the actual quantities of the respective pay items of the Work performed, at the contract unit prices bid in the Proposal, in accordance with the Plans and Specifications, as finally determined from actual measurements made during the progress or after completion of the work, and if, upon completion of the Work, the actual quantities of the respective pay items performed be more or less than the quantities estimated in the Proposal, the contract unit prices bid in the Proposal will still prevail, except as otherwise hereinafter provided.

"2.04. Examination of Plans and Specifications, Special Provisions and Site of Work:

"All Bidders are required to examine carefully the site of the proposed Work, the Proposal Form, Plans, Standard Specifications, Supplemental Specifications, Special Provisions and the Contract and Bond Forms and it is mutually agreed that the submission of a Proposal shall be prima facia (sic) evidence that the Bidder has made such examination and has judged for and satisfied himself as to the conditions to be encountered as to the character, quality, and quantities of work to be performed and materials to be furnished, and as to the requirements of Plans, Standard Specifications, Supplemental Specifications, Special Provisions, Contract and Bonds and as to the contingencies. Bidders shall also familiarize themselves with and shall comply with the requirements of all federal and state laws and local laws and ordinances which may directly or indirectly affect the Work or its prosecution, persons engaged in or employed on the Work, and the materials or equipment used in the Work. No ad-

and of the bid proposal[2] are quoted in the margin.

Mason's total bid was $346,882.76, included in which was a unit price of $3 per cubic yard on the estimated 5000 cubic yards of rock excavation. Mason's bid proposal was accepted and incorporated into the contract which provided in part:

"2. That the first party shall commence the work to be performed under this agreement on a date to be specified in a written order of the second party, and shall fully complete all work hereunder within 150 consecutive calendar days from and after said date.

\* \* \* \* \* \*

"6. It is mutually agreed between the parties hereto that time is the essence of this contract, and in the event the construction of the work is not completed within the time herein specified, it is agreed that from the compensation otherwise to be paid to the Contractor, the second party may retain the sum of $100.00 per day for each day thereafter, Sundays and holidays included, that the work remains un-

justments or compensations will be allowed for losses caused by failure to comply with the above requirements.

\* \* \* \* \*

"8.07. Determination and Extension of Contract Time for Completion of Work:

\* \* \* \* \*

"In case the final estimate exceeds the Contract Bid Price an extension in the working days will be granted the Contractor. This extension shall be in direct proportion to the amount of total overrun in dollars, that is, the percentage of overrun shall first be computed and the working days shall be increased by the same percentage.

\* \* \* \* \*

"8.08. Failure or Delay in Completing Work on Time:

"Time is an essential element in the Contract as delay in the prosecution of the Work will inconvenience the public, obstruct traffic, and interfere with business, it is important that the Work be pressed vigorously to completion. Should the Contractor, or, in case of default, the Surety fail to complete the Work within the time stipulated in the Contract, or within such extra time as may be allowed as hereinabove provided, a deduction of the amount stipulated in the schedule Liquidated Damages will be made for each and every calendar day that such Contract remains uncompleted after the calendar date specified for completion or after the expiration of the number of working days allowed for completion. The said amount stipulated in the said schedule is hereby mutually agreed upon as liquidated damages.

"Permitting the Contractor to continue and finish the Work or any part of it after the calendar date specified for completion or after the expiration of the number of working days allowed for completion, after any extention of time. shall in nowise operate as a waiver on the part of the Owner of the rights of the Owner under this Contract.

"In any suit for collection of, or involving the assessment of, liquidated damages, the reasonableness of the amount per day stipulated in the schedule shall be presumed. The liquidated damages referred to herein are intended to be and are cumulative, and shall be in addition to every other remedy now or hereafter enforceable at law, in equity, by statute, or under the Contract."

2. "The undersigned, as Bidder, hereby declares that he has examined the site of the work and informed himself fully in regard to all conditions pertaining to the place where the work is to be done; that he has examined the plans and specifications for the work and contractual documents relative thereto; and has read all Special Provisions furnished prior to the opening of bids; that he has satisfied himself relative to the work to be performed.

\* \* \* \* \*

"The quantities for bid items listed on the proposal sheets are estimated quantities only for the purpose of comparing bids. Any differences between these estimated quantities and actual quantities required for construction shall not be taken as a basis for claims by the Contractor for extra compensation. Compensation will be based on the unit prices and actual construction quantities.

\* \* \* \* \*

"The Bidder further proposes and agrees hereby to commence the work with an adequate force, plant and equipment at the time stated in the notice to the Contractor from the Engineer to proceed, and fully complete performance within 150 consecutive calendar days from and after the date stated in said notice."

completed, which sum shall represent the actual damages which the Owner will have sustained per day by failure of the Contractor to complete the work within the time stipulated, and this sum is not a penalty, being the stipulated damage the second party will have sustained in the event of such default by the first party."

There was no contention that the quantity or hardness of the rock, or any other circumstance, rendered ultimate performance of the contract impossible or so impractical as to excuse the contractor. In fact, before the institution of this suit the contract had been finally and completely performed except for the time period, as to which there was an admitted overrun of 381 days.

The issue decided by the jury's verdict may be understood from the following portion of the Court's charge to the jury:

"One may be excused from the performance of his contract if performance is impossible. The impossibility, however, must consist in the nature of the thing to be done, and not merely in the incapacity or inability of the party making the promise to do it.

"The impossibility of performance which will excuse the promised performance is that the promised performance was at the making of the contract impracticable owing to some extreme or unreasonable difficulty, expense, injury or loss involved, rather than that it is scientifically or actually impossible.

"Mere unanticipated difficulty not amounting to impracticability is not included within the definition of 'impossibility' as here employed.

"Impracticability in the sense stated above, rather than absolute impossibility, is the test by which 'impossibility of performance' is measured.

" 'Impossibility' as employed in the term 'Impossibility of performance' does not mean beyond every possibility. It means beyond every practicable possibility.

"The mere fact that the performance of a promise is made more difficult and expensive than the parties anticipated will not excuse the person making the promise.

"Where, however, unanticipated circumstances have made performance of the promise vitally different from, or wholly inconsistent with, what reasonably should have been within the contemplation of the parties when they entered into the contract, the one making the promise will be excused from his promised performance.

"The promised performance here involved was the completion of the contract in one hundred sixty-four calendar days—one hundred fifty days, as extended. Governed by these principles and under the facts in this case, was the contractor excused from the promised performance of this provision? And we have involved only one provision of the contract. If so, Plaintiff is entitled to recover. If not, it is not so entitled."

The district court, in its charge, adopted what is referred to by Professor Williston as "the modern defense of impossibility," to the effect that, " * * * impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." A.L.I., Restatement of Contracts, Sec. 454. According to Professor Williston and to the Restatement of Contracts, of which he was the Reporter, that modern doctrine applies to partial impossibility, that is, to impossibility to perform part of the performance promised. 6 Williston on Contracts, rev. ed., § 1956; 2 Restatement of Contracts, § 463. Williston undertakes to trace the process of evolution of the rule from the early cases accepting "a strict rule which will require the parties, when they form a contract, to foresee its consequences as accurately as possible, though at the expense of serious

hardship to one of them if unforeseen circumstances render it impossible under such circumstances," to the modern rule which he advocates giving an excuse under such circumstances. According to Professor Williston:

> "The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor." 6 Williston on Contracts, rev. ed., § 1931.

The Supreme Court of Alabama has not yet adopted this so-called modern doctrine, nor written one way or the other on it. Its decisions to date tend to hold a promisor strictly to the literal terms of his promise. Stone v. Dennis, 1836, 3 Port. 231, 241, 242; Lee v. Cochran, 1908, 157 Ala. 311, 47 So. 581, 582; Marx v. Kilby Locomotive & Machine Works, 1909, 162 Ala. 295, 50 So. 136, 137; Capital Fertilizer Co. v. Ashcraft-Wilkinson Co., 1918, 202 Ala. 92, 79 So. 484, 487.[3]

For example, in Stone v. Dennis, supra, the Alabama Court said:

> "It is the duty of contracting parties, to provide against contingencies: they are presumed to know, whether the completion of the duty they undertake, be within their power. Therefore, to excuse them from the performance of their contracts, they must bring themselves within some one of the above provisions.— Chitty on Con. 14. Without it, however hard the case may be, the party is held to his contract. 1 Term R. 312." 3 Port. 231, 241, 242.

Again, in Lee v. Cochran, supra, the Supreme Court of Alabama spoke as follows:

> "Where a contract is unambiguous, is plain in expression, we know

of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Indeed, where the parties express without ambiguity their intention, of course, no court can alter the agreement, and no room for judicial construction is left. The contract in hand is plain, speaks a legal undertaking on the part of all parties thereto, and, if the bargain is hard or unwise in any respect, the error in judgment is his or theirs, and, in the absence of fraud or other vitiating circumstances, cannot be relieved." 47 So. 581, 582.

In Marx v. Kilby Locomotive & Machine Works, supra, the Supreme Court of Alabama refused to relieve the locomotive works from its promise to "overhaul [a locomotive] thoroughly and put it in first-class running order" for the sum of $1,250.00 to be borne share and share alike by the contracting parties, for whose joint account it was agreed that the locomotive might later be sold at a price of $2,500.00. The Court held insufficient, as an excuse for nonperformance, a plea that inherent and hidden defects in the locomotive had been discovered by reason of which it would have taken about $3,000.00 or more to have made said engine marketable, and then it would have been worth only about $2,000.00 or $2,250.00, and would then have been a losing investment for both of the parties.

Encouraged by this Court's approach to the application of the Erie doctrine in Fahs v. Martin, 5 Cir., 1955, 224 F.2d 387, 398, the appellee, plaintiff below, succeeded in persuading the district court, in effect, to reason that if this case were before the Supreme Court of Alabama it would adopt the so-called modern defense of impossibility. Under its facts, we think that Fahs v. Martin was correctly decided for the reason well ex-

---

**3.** A few other Alabama cases touching on the defense of impossibility of performance are: Jones v. Anderson, 1887, 82 Ala. 302, 2 So. 911; State v. Crosby, 1897, 114 Ala. 11, 22 So. 110; Ringeman v. State, 1903, 136 Ala. 131, 34 So. 351; Greil Bros. Co. v. Mabson, 1912, 179 Ala. 444, 60 So. 876, 43 L.R.A.,N.S., 664;

**600**

pressed by Professor Moore: "Blind adherence to a particular state decision, even of the highest state court * * *, without properly evaluating it will result in injustice and perversion of the state law which the federal court sets out to apply." Moore's Commentary on the U. S. Judicial Code, Paragraph 0.03(45), p. 338.

■ We agree with Moore that, "The problem is essentially a correct application of stare decisis." Id. p. 337. In adjudicating state-created rights in diversity cases, the federal courts, in effect, act simply as other courts of the state. Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079. That principle cannot be extended so far as to hold that any of the federal courts act with the same power as the highest court of the state without impinging on the doctrine—settled in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188—that the Constitution does not confer upon the federal courts the power to declare substantive rules of common law applicable in a state. When the substantive law of the state has been authoritatively declared by its highest court, "the federal court is not free to apply a different rule however desirable it may believe it to be, and even though it may think that the state Supreme Court may establish a different rule in some future litigation." West v. American Tel. & Tel. Co., 1940, 311 U.S. 223, 238, 61 S.Ct. 179, 184, 85 L.Ed. 139. In footnote 14 to Browder v. Gayle, D.C.M.D.Ala.1956, 142 F.Supp. 707, 716, affirmed 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, the writer undertook to state the principles of stare decisis by which lower federal courts should be governed in following or departing from a decision of the Supreme Court of the United States not theretofore expressly overruled but

claimed to be obsolete or impliedly overruled. Stare decisis persuaded this Court en banc to forego considering a change in the test for insanity in federal criminal cases, and to leave that question to the Supreme Court of the United States. Howard v. United States, 5 Cir., 1956, 232 F.2d 274. Much the same principles should be applied in following or departing from the decisions of the highest court of a state on a question of state substantive law.

■ The district court is in much the same situation as that facing a state trial court. In Alabama, the lower state courts cannot depart from a State Supreme Court decision "by any mere line of reasoning that might occur to us. If it is to be changed it seems to us the alteration could only be made by our Supreme Court." Henry v. State, 1944, 31 Ala.App. 444, 18 So.2d 138, 139; certiorari granted and cause remanded, 1944, 245 Ala. 487, 18 So.2d 140; see also, Hall v. State, 1940, 29 Ala.App. 588, 199 So. 744, 745. The district court should have applied the law as last declared by the State Supreme Court.

That is certainly true as to the law to be applied to the facts and circumstances of this case relating to the claimed impossibility or impracticability of completing the contract within the stated time. There were express provisions of the contract which certainly placed upon the promisor the risk of such impracticability of performance as existed in this case.

■ From the outset, the contractor was informed that the approximate estimates of the quantities of different pay items were "to be used only as a basis for comparing bids for awarding the contract," and that payment would be made for "the actual quantities of the respective pay items of the work performed." [4]

Slaughter v. C.I.T. Corporation, 1934, 229 Ala. 411, 157 So. 463; Gilbert v. Wilson, 1939, 237 Ala. 645, 188 So. 260; compare

Brooks v. Cook, 1902, 135 Ala. 219, 34 So. 960.
4. Paragraph 2.03 of Specifications, footnote 1, supra.

Each bidder agreed that he had examined carefully the site of the proposed work, "and has judged for and satisfied himself as to the conditions to be encountered as to the character, quality and quantities of work to be performed." [5] In his bid proposal, the contractor specifically declared "that he has examined the site of the work and informed himself fully in regard to all conditions pertaining to the place where the work is to be done; * * * that he has satisfied himself relative to the work to be performed." [6] Further, provision was made for an extension of the time limit in proportion to the amount of any overrun in dollars.[7] Thus, the contractor could have protected himself by bidding a higher unit price for rock excavation. Failure or delay in completing the work on time was not unforeseen, but was amply provided for in the contract.[8] It seems clear to us that, at least to the extent of any impossibility or impracticability disclosed by the facts of this case, the risk of being able to complete the work within the stated time was assumed by the contractor, appellee's principal.

The district court should have considered the defendant's request for affirmative charge, with hypothesis, made in accordance with the practice prevailing in the state courts, as substantially equivalent to a motion for a directed verdict under Rule 50, Federal Rules of Civil Procedure, 28 U.S.C.A. Atlantic Greyhound Corporation v. McDonald, 4 Cir., 1942, 125 F.2d 849, 850. For failure to grant that motion, and for failure to grant the motion for new trial, the judgment is reversed. See Yorkshire Indemnity Co. of N. Y. v. Roosth & Genecov Production Co., 5 Cir., 1958, 252 F.2d 650, 657.

Reversed.

5. Paragraph 2.04 of Specifications, footnote 1, supra.

6. See footnote 2, supra.

7. Paragraph 8.07 of Specifications, footnote 1, supra.

8. See Paragraph 8.08 of Specifications, footnote 1, supra, and Paragraph 6 of Contract, quoted ante p. 5 [272 F.2d 597].