The defendant below, Poughkeepsie Savings Bank, appeals from the trial court's order which permanently enjoined Poughkeepsie's attempt to collect an irrevocable Letter of Credit established by the plaintiff, Highland Terrace Apartments.
Highland, a partnership, employed W.B. Phillips to secure permanent financing for an apartment complex on Birmingham's southside. Phillips sought a $940,000 commitment from Poughkeepsie, but got only $850,000. The commitment had a closing date in eighteen months, and contained a liquidated damages clause, requiring that an irrevocable Letter of Credit in the amount of $8,500 be established. The pertinent portion of that clause reads, as follows:
 "[T]he Borrowers must deposit an additional sum of $8,500 in the form of an irrevocable Letter of Credit, with the acceptance of this commitment as a good faith deposit, which shall be forfeited as liquidated damages if the Borrower defaults under the terms and conditions of this commitment; otherwise, it shall be returned to the Borrower upon delivery the mortgage loan."
The agreement also required the personal guarantee of payment by the members of the partnership until 85% of the apartment units were occupied for one year. Interim construction financing was obtained from The First National Bank of Birmingham, which also issued the $8,500 Letter of Credit.
Due to numerous problems which arose, it was two or three months after the final loan commitment of July 22, 1975, before actual construction was begun. Heavy rains fell in Birmingham during the first few months of 1976. Highland's progress was hindered because of the steep grade and loose dirt at the building site. Evidence tended to show that progress toward completion was being rapidly made, and that the complex would be successful. Nevertheless, Phillips was asked to seek an extension of the commitment closing date and an increase in the loan commitment of $100,000. In November of 1976, Phillips sent Poughkeepsie several letters of inquiry and Poughkeepsie, after some delay, agreed to send two representatives to Birmingham on December 7, 1976, to make an on-site inspection. In a telephone conversation on December 28, 1976, a Poughkeepsie employee informed Phillips that the extension and increase in the loan commitment had been approved and that a letter would be forthcoming. The actual terms and conditions of the new loan commitment were never discussed.
The notice of the extended closing date came on January 11, 1977, in the form of a new commitment agreement which would supersede the July 22, 1975 agreement. The new commitment offer was unacceptable to Highland because it contained terms not in the earlier commitment. The new offer included clauses calling for a six-month extension, $8,500 loan fee, $850.00 processing fee, $8,500 good faith Letter of Credit and an absolute guarantee of payment by the individual partners and their spouses. Some confusion arose as to whether the fees set out in the new proposal would be in addition to the original loan commitment requirements or were restatements. The most objectionable addition was the personal guaranty requirement.
The January 22, 1977, closing deadline under the original commitment arrived and Poughkeepsie attempted to collect on the Letter of Credit. Highland sought injunctive relief. A Temporary Restraining Order was issued and Poughkeepsie counterclaimed against Highland for the amount of the Letter of Credit and filed a crossclaim against The First National Bank of Birmingham, with whom the Letter was established. In addition, Poughkeepsie sought $5,000 for the expenses incurred by it in defending against the injunction. Poughkeepsie's jury demand on the original complaint was denied and the request for a jury on the counterclaim was withdrawn. *Page 1110 
Stating that the courts of Alabama will balance the equities, the trial judge permanently enjoined Poughkeepsie from attempting to collect the Letter of Credit, but did award it $1,750 for expenses incurred in defending the action. Stating that the loss of the $8,500 fee would not work any hardship upon a banking institution such as Poughkeepsie, and that Poughkeepsie had not suffered any additional monetary expenses, the Letter of Credit was found to be a penalty. The trial court further found that Poughkeepsie had not dealt in good faith in that it had led Highland into believing that the requested extension of time would be granted under the same conditions that existed in the original loan commitment, and that Poughkeepsie had waited until January 11, 1977, to submit an unacceptable commitment.
Poughkeepsie attacks the trial court's granting of the injunction on the ground that rainy weather does not excuse one from the terms of his contract and that the $8,500 Letter of Credit does not constitute a penalty under the facts of this case. Poughkeepsie also contends that the trial judge erred in failing to award it the sum of $5,000 as attorney's fees and costs of defending the wrongful injunction. Lastly, Poughkeepsie argues that they were wrongfully denied their right to trial by jury as to both the original complaint and counterclaim.
Breaking down the sequence of events which led to this lawsuit leaves us with the conclusion that the trial judge was in error. This is not a case where we are faced with an oretenus problem; instead, the facts in the record before us, as a matter of law, do not support the judgment. Very simply, the parties entered into a contract on July 22, 1975, wherein Poughkeepsie promised to loan Highland $850,000 on January 22, 1977. In return, Highland promised to be in a position to close the loan on January 22, 1977, or forfeit a $8,500 Letter of Credit as liquidated damages. Because of unusual weather, and terrain conditions, Highland was running behind schedule and needed an extension. Trying to avoid payment of the Letter of Credit, and seeking to acquire additional capital, they requested Poughkeepsie to give an extension of time and an additional $100,000. After considering the application, Poughkeepsie, which was under no obligation to do so, responded to Highland's request with a new superseding commitment. Highland rejected the offer and the loan was not closed on January 22, 1977.
The legal conclusion is inescapable; Highland had breached its contract with Poughkeepsie. Highland's excuse was based on the adverse weather conditions, and on the fact that Poughkeepsie failed to promptly notify it that the new commitment would contain new terms until January 11, 1977, and that this late notification constituted bad faith. Highland argues that it acted in good faith and that the $8,500 Poughkeepsie seeks amounts to a forfeiture. We disagree.
Alabama decisions have strictly held a promissor to the literal terms of his promise. City of Albertville, Alabama v.United States Fidelity Guaranty Co., 272 F.2d 594 (5th Cir. 1960). Here, Highland promised to close the loan on January 22, 1977; it did not do so. Nowhere does the record reflect that Poughkeepsie was under any legal or contractual duty to vary the terms of its agreement or to promptly inform Highland of the exact terms of the offer that Poughkeepsie eventually made. The trial judge, in his order, relied on the evidence offered by Highland, over Poughkeepsie's objection, to the effect that the unusual amounts of rainfall delayed completion of the apartment complex. This was error. As this Court said inOtinger v. Water Works and Sanitary Sewer Board, 278 Ala. 213,177 So.2d 320 (1965):
 "* * * [W]here one by his contract creates an absolute obligation in which the obligation rests on himself, he is bound to perform within the terms of the contract, or answer in damages despite an act of God, unexpected difficulty, hardship, or inevitable accident, since he should have provided against such contingencies by his contract. Partridge v. Forsyth, 29 Ala. 200; Capital Fertilizer *Page 1111 Co. v. Ashcraft-Wilkinson Co., 202 Ala. 92, 79 So. 484."
Highland says that under all the facts here, the trial judge was authorized to reach the conclusion that a forfeiture has accrued. Highland relies on Hunter-Benn Co. v. Bassett LumberCo., 224 Ala. 215, 139 So. 348 (1931), and states that a court of equity will generally relieve a party of strict compliance with the time of performance in a contract. But this rule has an exception which is stated in the Hunter-Benn Co. decision, as follows:
 "* * * Consequently a court of equity will generally relieve a party who has not performed his contract strictly, as to time, unless it appears affirmatively that the parties regarded it as an essential element in their agreement, or unless such a result follows from the nature and purpose of the contract. And slight circumstances are sufficient in a court of equity to prevent a party from taking the benefit of a time stipulation." (emphasis supplied).
The nature and purpose of the contract before this Court was to loan some $850,000 at 10% interest; in fact, this was Poughkeepsie's sole promise. Time was of the essence. Highland was seeking an extension. Poughkeepsie offered an extension, but the terms were unacceptable. Under these facts, no court should change the date of closing agreed upon by the parties.
The last question is: Was the sum of $8,500 in liquidated damages so excessive, under the facts, as to prevent the same from being a valid liquidated damages clause? We think not. InShel-Al Corporation v. American National Ins. Co., 492 F.2d 87
(5th Cir. 1974), the Fifth Circuit Court of Appeals, relying on an interpretation of Alabama law, found a clause requiring a $24,000 Letter of Credit plus a $24,000 cash deposit for liquidated damages on a $1,600,000 mortgage loan commitment was a valid requirement. In fact, the Shel-Al Corporation decision is basically identical to the case presently before us. See, also, Frank's Nursery Sales, Inc. v. American National Ins.Co., 388 F. Supp. 76 (E.D.Mich. 1974); White Lakes ShoppingCenter, Inc. v. Jefferson Standard Life Ins. Co., 208 Kan. 121,490 P.2d 609 (1971). Thus, we do not find the $8,500 to be an unreasonable liquidated damages sum under the facts of this case.
Poughkeepsie also asks this Court to reverse the trial court's award of some $1,750 for the cost and expenses it incurred in defending the wrongful injunction obtained by Highland. Poughkeepsie claims this sum is inadequate to compensate it for the costs and expenses it incurred. Poughkeepsie relies on Rule 65 (c), A.R.C.P., which states:
 "SECURITY. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorneys fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases.
 "The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule."
We decline to set aside the court order. Although, as we have heretofore expressed, the injunction was wrongfully issued, the court made a finding of fact that the reasonable cost incurred in this case by Poughkeepsie amounted to $1,750. The court stated:
 "The court finds that the Defendant, Poughkeepsie Savings Bank, has incurred travel expenses and attorney's fees for the defense of this action as described aforesaid and determines that the reasonable value thereof is the sum of $1,750.00 which the Plaintiff is directed and ordered to pay to the Defendant, Poughkeepsie Savings Bank, within (30) days from the date of this Order." *Page 1112 
It has been a longstanding rule of this state that where the evidence is heard ore tenus, the findings of the trial court will not be disturbed unless plainly and palpably contrary to the weight of the evidence. We do not find any evidence to the contrary. Casey v. Krump, 263 Ala. 346, 82 So.2d 424 (1964).
Poughkeepsie also argues its demand for jury trial as to the complaint and counterclaim was wrongfully denied. The record affirmatively shows that Poughkeepsie voluntarily withdrew its demand. Thus, we are left without anything to review. See Rule 38 (d), A.R.C.P.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
BLOODWORTH, JONES, SHORES and BEATTY, JJ., concur.