377 So.2d 954 (1979)
ALPINE CONSTRUCTION COMPANY
v.
The WATER WORKS BOARD OF the CITY OF BIRMINGHAM, Alabama.
78-443.
Supreme Court of Alabama.
November 30, 1979.
*955 S. P. Keith, Jr. of Keith, Keith & Keith, Birmingham, for appellant.
Crawford S. McGivaren, Jr., George G. Lynn, Birmingham, for appellee.
PER CURIAM.
This is an appeal by Alpine Construction Company, Plaintiff below, from the entry of a directed verdict in favor of Defendant/Appellee, the Water Works Board of the City of Birmingham. Alpine brought suit to recover $30,000 which it claims was wrongfully withheld pursuant to the liquidated damages provision of its construction contract with the Board. The $30,000 constitutes less than one percent of the total value of the contract, which was $3,867,931.
The issues raised on this appeal concern the central question whether the Board was entitled under the terms of the contract to assess liquidated damages against Alpine due to its failure to complete the contract within the specified time. Alpine contends that the Board was not entitled to assess liquidated damages because:
1. The Board waived its right to damages;
2. The failure to complete on time was the fault of the Board, or, alternatively, the fault jointly of the Board and Alpine;
3. The contract was impossible to conclude within the specified time; and
4. Alpine was either absolutely entitled to an extension of time under the contract, or, alternatively, the contract provision providing for an extension was unclear and ambiguous and should have been submitted to the jury.

I.
The basis for Alpine's waiver contention is that the Board did not terminate the contract for breach when the contract completion date had passed, but instead allowed Alpine to continue work until the project was completed. In the argument section of its brief, Alpine states:
"Again, Alpine continued under the contract and nothing was done by the Board to declare a termination for breach or a dissolution; therefore, we take the position there was a waiver."
Building and construction contracts frequently provide that if the contractor fails to complete the work contracted for by a specified date he shall be liable to the contractee in liquidated damages, usually on a per diem basis. 13 Am.Jur.2d, Building and Construction Contracts, § 86, at 87. The provision for liquidated damages in the contract before us is of this kind. It stipulates that the contractor shall "pay to the Owner for each and every calendar day that he shall be in default in completing the work within the times stipulated, the sum of One Hundred Dollars ($100.00)." As such, the contract plainly contemplated continuation by the contractor in the event that Alpine could not complete work within the specified deadlines. There is, therefore, no merit to the contention that the Water Works Board waived liquidated damages by allowing Alpine to continue. To the contrary, liquidated damages, under the contract here, presupposed in fact such continuation as the very basis for their assessment.

*956 II.
Alpine next argues that the Water Works Board was itself responsible for the delay caused by Alpine's difficulty in obtaining materials to meet contract specifications because the Board, and not Alpine, established these specifications: ". . . the delay to complete the contract on time was the fault of the defendant. In plaintiff's Exhibit 1 which is the contract . . . we find the requirement for the anthracite coal to be clean and free from long, thin or scaly pieces, and shall have a hardness of 3.0 or greater on the MOH Scale . . . . The testimony is to the effect that there was only one company in the United States or in the World that produced this particular media during the time of the contract . . . If plaintiff had been allowed to proceed without this particular material or with some other material which would have been available, it would have finished its contract on the original completion date. The fault is not with the plaintiff but is with the defendant."
Alpine's argument here is, simply, that the Water Works Board caused Alpine to be late by requiring it to do that which Alpine undertook to do when it entered into the contract. The argument is wholly without merit.

III.
The third issue raised by Alpine is also related to Appellant's difficulty in obtaining the anthracite coal specified under the contract. Alpine contends that its late performance is entitled to be excused under the doctrine of impossibility of performance, but fails to cite any Alabama cases in support of its position. Under Alabama law, a promisor is held strictly to the literal terms of his promise. Poughkeepsie Savings Bank v. Highland Terrace Apartments, 352 So.2d 1108 (Ala.1977); City of Albertville, Alabama v. United States Fidelity & Guaranty Co., 272 F.2d 594 (5th Cir. 1960); see, also, "Impossibility of Performance in Action for Breach of Contract," 15 Ala.L. Rev. 582 (1963).
Where one by his contract undertakes an obligation which is absolute, he is bound to perform within the terms of the contract or answer in damages, despite an act of God, unexpected difficulty, or hardship, because these contingencies could have been provided against by his contract. Poughkeepsie Savings Bank, supra; dinger v. Water Works and Sanitary Sewer Board, 278 Ala. 213, 177 So.2d 320 (1965).
It is true that equity recognizes an exception which generally will relieve a party of strict compliance with the time of performance in a contract; but this applies only where the contract does not expressly or implicitly, by its nature and purpose, make time an essential part of the agreement. Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348 (1932).
The contract before us expressly states that "[t]he attention of Bidders is especially directed to the time required for completion of the work required under this contract" and then goes on to specify liquidated damages for "failure to complete on time."

IV.
This brings us to the final issue: Whether the provision in the contract governing extensions of time is ambiguous and should have been submitted to the jury for interpretation. There is scarcely a rule more firmly established than that the court, not the jury, will interpret the meaning of a contract, whether oral or written, unless the court determines the contract to be ambiguous and one of the parties makes an offer of proof as to surrounding facts and circumstances which would clarify the contract's meaning, in which case it is within the province of the jury to ascertain those facts and draw such inferences from them as are necessary to the interpretation of the contract upon proper instructions by the court. Foster & Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746 (1953), and cases cited therein.
*957 Here, the trial Court held the contract to be clear and unambiguous and, as such, its interpretation was for the court and not for the jury. The contract provides for extensions of time, within the discretion of the contractee's engineer, for delays caused by construction changes ordered by the engineer, or by fire, lightning, earthquake, tornado, cyclone, riot, insurrection or war, and for on-site personnel or labor problems:
"SEC. 20EXTENSION OF TIME
"The Contractor expressly covenants and agrees that in undertaking to complete the entire work within the time stated in the contract, he has taken into consideration and made allowance for all of the ordinary delays and hindrances incident to such work, whether growing out of delays in securing materials or workmen, or otherwise. Should the contractor, however, be substantially delayed in the prosecution and completion of the work by any changes, additions, or omissions therein ordered in writing by the Engineer, or by fire, lightning, earthquake, tornado, cyclone, riot, insurrection or war, or by the abandonment of the work by the workmen engaged therein through no fault of the Contractor, or by the discharge of all or any material number of workmen engaged therein through no fault of the Contractor, or by the discharge of all or any material number of workmen in consequence of difficulties arising between the Contractor and such workmen, or by the neglect, delay or default of any other Contractor of the Owner, the Contractor may, within five (5) days after the occurrence of the delay for which he claims allowance, notify the Engineer thereof in writing, and thereupon, and not otherwise, the Contractor shall be allowed such additional time for the completion of the work as the Engineer in his discretion shall award in writing."
In the Court below, as well as in brief, Alpine alleged that its delay was caused by its difficulty in obtaining the anthracite coal called for in the contract. Thus, Alpine's reason for delay does not fall within any of the categories of excused delay enumerated by the contract, and the trial Court properly directed verdict for the Defendant on this issue. Moreover the record in this case discloses that Alpine was 401 days late in completing its contract which, at the rate of $100 per day would have amounted to $40,100 in liquidated damages instead of the $30,000 actually assessed. Alpine, in fact, received an extension of 101 days.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.